## No. 17,423.

Ress et al. *v.* Rediess.
(278 P. [2d] 183)

Decided December 20, 1954.

Mr. ISAAC MELLMAN, Mr. GERALD N. MELLMAN, for plaintiffs in error.

Mr. F. W. HARDING, Mr. G. E. BOATRIGHT, for defendant in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the Court.

ON or about August 16, 1950, plaintiffs in error signed a complaint in the county court of Adams county in which it was alleged as follows: "The undersigned complain that Fred W. Rediess, a resident at Adams county, Colorado, is so insane or distracted in his mind, as to endanger his own person or property, or the person or property of another or others, if allowed to go at large, and pray that inquiry be had as provided by law." The party against whom this complaint was directed is the defendant in error.

Upon the filing of said complaint Rediess was appre-

hended about seven o'clock P.M. on the date of the filing of the complaint and taken into custody and by the sheriff transferred to the Colorado Psychopathic Hospital in Denver where he was retained by reason of the pending complaint for a period of one week. He was subjected to an examination by numerous doctors, found to be sane, and was released.

On September 15, following, he filed his complaint in the district court against plaintiffs in error for damages, alleging that the action of the defendants in signing the complaint was willful, wrongful and malicious and without reasonable or probable cause, and done for the purpose of confining plaintiff in the state home for the insane and depriving him of his liberty and freedom. He further alleged that defendants were guilty of malice and a willful and wanton and reckless disregard of the rights of the plaintiff; also for loss of wages; and prayed for $10,000 actual damages, $5,000 exemplary damages, and for body execution.

Defendants answered, admitting they signed the complaint referred to and denied all other allegations; as a second defense they alleged that they acted with the advice of legal counsel in signing the complaint; and for a third defense alleged that at the time of signing the complaint they had good probable cause to suppose that plaintiff was in fact insane.

This cause has been submitted to a jury in two trials. The first trial was April 29, 1952, which resulted in a verdict for plaintiff and against defendants in the sum of $2,500. Motion for new trial was filed and based upon the ground that the attorney, upon whose advice defendants relied and acted, was not available at the time of the first trial, because of his service in the army, and the motion was granted. The second trial was had in June of 1953, resulting in separate verdicts against defendants as follows: $1,500 actual and $500 exemplary damages against H. W. Ress; $1,200 actual and $300 exemplary

damages against W. E. Emerson; and $1,200 actual and $300 exemplary damages against William Newberry.

A motion for judgment notwithstanding the verdict was filed by defendants, on June 20, and a motion for new trial filed on July 11, in which it was claimed that the verdict was contrary to the evidence; that the court erred in not sustaining a motion which had been made for directed verdict; further that the verdict of the jury as to actual damages was not in conformity with the instructions and the law, in that the jury found different amounts of actual damages against different defendants; and finally, claimed error in submitting an additional instruction as a part of instruction No. 7 after the close of the opening arguments by counsel for plaintiff.

On October 22, 1953, the trial court, in a memorandum to the attorneys, held that the court might properly enter separate judgment against each of the defendants for exemplary damages in the amount as found, and therefore allowed plaintiff fifteen days to elect whether or not he would take judgment against each of the defendants for the sum found by the jury as exemplary damage, and if plaintiff failed to so elect within the fifteen days, the motion for new trial would be sustained. Plaintiff filed a request that the court amend its memorandum and grant a new trial on the question of damages only.

The motion for judgment notwithstanding the verdict and the motion to amend the memorandum were denied; and it further was ordered that plaintiff have ten days from that date in which to elect to waive the judgment for compensatory damage and accept the judgment for the sums found as exemplary damages. On failure to so elect by a written notice of election within the ten days, "the motion for new trial be, and the same is, hereby granted." Plaintiff moved on December 24 for an extension of time from December 15, in which to file the election; and that as a result of the denial by this Court of plaintiff's petition for an order requiring the trial court

to grant plaintiff's motion for new trial on the question of damages only, the plaintiff then decided to elect and accept the exemplary damages awarded, and waived the right to additional damages. Thereafter, on January 25, 1954, the court entered its order for direction of the entry of judgment; ordered that the verdict of the jury awarding compensatory damages be set aside; and that plaintiff have judgment against defendants for exemplary damages as found by the jury, namely: $500 against Ress; $300 against Emerson; and $300 against Newberry. Motion for new trial was denied and stay of execution granted.

■ ■ There is little reason to extend the statement of facts much beyond what already has been herein stated; however, it is significant to note that defendants assert reliance upon a petition for restraining order against the plaintiff issued at the request of the public health officer of the Tri-county District Health Department of Adams county in restraining plaintiff from continuing the existence of a filthy condition on his premises, as well as reliance upon advice of counsel, who then was deputy district attorney of the district. In connection with the circumstances involving the health department restraining order, the condition and conduct of plaintiff seem to lead many to believe that plaintiff was of questionable sanity. Three witnesses for plaintiff testified favorably for him, both as to the condition of his premises as being no different from others in the neighborhood and as to his being rational. A number of witnesses for defendants, as well as defendants, testified unfavorably as to conditions surrounding the premises of plaintiff and plaintiff himself. There is no testimony whatever to the effect that defendants acted with any malice toward plaintiff, or entertained any ill feeling whatever toward him, and such cannot be inferred from any of the testimony in the case. If defendants in good faith, and with no ill intent believed there was probable cause, and probable cause did exist, liability of defend-

ants never attached. "The usual standards of human judgment and conduct determine what is and what is not probable cause." *Lounder v. Jacobs,* 119 Colo. 511, 205 P. (2d) 236, quoted with approval in *Montgomery Ward & Co. Inc. v. Pherson,* 129 Colo. 502, 272 P. (2d) 643.

While the jury resolved the question of probable cause against defendants, we perceive that in doing so it followed an erroneous amendment to an instruction given to it after the conclusion of plaintiff's argument. Originally the instruction read as follows: "You are instructed that any motive other than to protect the person or property of the plaintiff or another or others is malicious and if you find the plaintiff has proven malice and a lack of probable cause by a preponderance of the evidence then your verdict must be for plaintiff on plaintiff's complaint." The amendment and added paragraph to this instruction is as follows: "If you find, however, from a preponderance of the evidence, that no probable cause existed for the acts of the defendants or any of them, in signing the lunacy complaint marked Exhibit 1, *malice may be inferred* from said acts." (Italics ours.)

The jury in another instruction was told that it was incumbent upon plaintiff to prove by a preponderance of the evidence that the action was malicious and without probable cause, and in case of failure to establish these elements by a preponderance of the evidence, it should find for defendants upon the complaint; consequently we have a situation where the jury was told that it must find that the action was malicious without probable cause by a preponderance of the evidence, and then by the amendment to the instruction, above noted, it was told that malice may be inferred from such acts; moreover the added portion of the paragraph is contradictory of the first paragraph. By Rule 51, R.C.P. Colo., it is especially provided that the instructions shall be read to the jury before argument.

Instruction No. 10 is as follows: "You are instructed

that if your verdict is for the Plaintiff, in assessing his damages you shall compute the total actual damages to the Plaintiff which he may have sustained, if any, and award such sum against each individual defendant as you may find liable in this action. You shall not apportion or divide the total amount of Plaintiff's damages, if any, between the individual defendants."

A casual reading of this instruction discloses that it could be confusing to a jury; however, the last clause of the instruction is specific to the end that any judgment shall not be apportioned between the individual defendants. The verdicts as herein recited are absolutely contrary to this instruction, and consequently, under the ruling in *Bartlett v. Hammond,* 76 Colo. 171, 230 Pac. 109, the verdicts cannot stand. That ruling is as follows: "When an action is against several joint tortfeasors, if the finding is against all of them, the verdict should be a single verdict against all for a single sum and not a several verdict against each defendant either in the same or separate sums. There can be no apportionment of damages as between defendants jointly liable in such a case."

 Defendants here were charged as joint tortfeasors. The irregularity of these verdicts in question apparently was recognized by the trial court, because, in its memorandum to attorneys filed thereafter, the court stated, "It is a serious question, however, whether or not the verdicts brought in by the last jury will stand. * * *." Nevertheless, the trial court accepted and recorded the verdicts, and in a commendable attempt to correct the situation, instead of refusing to receive the verdicts or requiring the jury to correct them, it set aside the judgment as to a judgment for actual damages returned against each defendant and entered judgment for the total amount of the exemplary damages assessed against each defendant. We are inclined to the view that when the judgment for actual damages was extinguished, the basis upon which exemplary damage could rest likewise

was entinguished. In other words, if there is no actual damage remaining, exemplary damage will not lie. This Court has consistently held that there must be some relation between actual damages and exemplary damages. While it is true that in the case of *McConathy v. Deck,* 34 Colo. 461, 83 Pac. 135, it was said that if actual damage is shown, even though its amount is not shown or found, and the other elements entitling plaintiff to exemplary damages are present, exemplary damages may be awarded. The effect of this ruling, if not indirectly overruled, was minimized by our opinion in *Livingston v. Utah-Colorado Land & Livestock Co.,* 106 Colo. 278, 103 P. (2d) 684. In the McConathy v. Deck case, supra, we find the following: "The amount of the actual damage sustained by appellee was not found. The court did find, however, facts showing that appellee sustained actual damage, and the undisputed facts show that he received such damage." If the elements, and the undisputed facts, show actual damage, then there is no logical reason why the damage could not be measured even though nominal. Damage is the basis for a finding that it is either actual or exemplary. If there is no damage susceptible of measurement or determination, a verdict for either cannot stand. If no damage, no injury, and the extent of the punishment supposedly reflected in a judgment for exemplary damage vanishes, therefore the case of *McConathy v. Deck, supra,* is in that respect overruled. We fail to see how exemplary damages alone can ever constitute a basis for a cause of action.

Since the judgment as it now stands is separate and distinct from any actual damage it is without basis and cannot stand. "To justify a recovery of exemplary damages, the act causing the injuries must be done with an evil intent, and with the purpose of injuring the plaintiff, or with such a wanton and reckless disregard of his rights as evidence a wrongful motive." *Gray v. Linton,* 38 Colo. 175, 88 Pac. 749. As hereinbefore stated, no ill feeling or evil intent on the part of defendants is

disclosed by this record. That being true, it is reasonable to say that defendants acted with, and were prompted by, a proper motive, looking more to the benefit of plaintiff and society, and not through any purpose of injury to plaintiff.

In view of our determination of the controlling questions involved, it is unnecessary to discuss other alleged errors or irregularities, therefore the judgment is reversed and the cause remanded with instructions to the trial court to grant a new trial.