Jack T. TAYLOR, Jr., Plaintiff,

v.

Ernest SANDOVAL, a/k/a Ernesto Sandoval, Individually and as Sheriff of Costilla County, Colorado, Samuel Gonzales, Roy D. Martinez and Ruben Pacheco, each Individually and as Members of the Board of County Commissioners of the County of Costilla and State of Colorado, the Board of County Commissioners of the County of Costilla, State of Colorado, Defendants.

Civ. A. No. 74-C-734.

United States District Court,
D. Colorado.

Dec. 28, 1977.

Albert B. Wolf, of Meer, Wolf & Slatkin, Denver, Colo., Jon L. Holm, of Holm & Dill, Denver, Colo., for plaintiff.

Normando R. Pacheco, of Pacheco & Auer, Denver, Colo., for defendant Ernest Sandoval, a/k/a Ernesto Sandoval and the remaining defendants.

Ronald Lee Cooke, of Cooke, Gilles & Schaefer, Denver, Colo., for remaining defendants.

## OPINION AND ORDER

CHILSON, Senior District Judge.

The plaintiff, a citizen and resident of North Carolina, prior to the year 1960 acquired a large tract of land (in excess of 77,000 acres) in Costilla County, Colorado, which is referred to herein as the Taylor Ranch.

A portion of the Taylor Ranch was traversed by four roads, commonly known as the Whiskey Pass, Vallejo, El Poso and San Francisco roads.

At some time subsequent to the year 1960, plaintiff constructed barricades across these four roads where they entered the Taylor Ranch to prevent the public from using that portion of the roads which existed on the Taylor Ranch.

In August 1974, the Board of County Commissioners of Costilla County removed the barricades claiming that the roads were public highways and were a part of the county highway system of Costilla County, and as such the County Commissioners had the right and duty to maintain these roads for the use of the public.

More specifically, the defendants claimed that these roadways were established by adverse use for more than twenty years prior to the year 1960 and thereby they became public highways by virtue of a Colorado statute which provides in its pertinent parts as follows:

"The following are declared to be public highways: . . . (c) All roads over private lands that have been used adversely without interruption or objection on the part of the owners of such lands for twenty consecutive years."

C.R.S. 1973, § 43–2–201.

The plaintiff denied that the roads in question were ever established as public highways by adverse use pursuant to the above statute and additionally, contended that if public highways were established by adverse use, they had been abandoned prior to August 1974.

The plaintiff, alleging diversity jurisdiction, instituted this action seeking compensatory and punitive damages from the defendants for an alleged unlawful trespass by the County Commissioners in entering upon his land and removing the barricades and sought an injunction against the County Commissioners enjoining any further trespass upon his property.

Trial was had to a jury and the following issues were submitted for determination by the jury under the following pertinent instructions:

"Therefore, the issues or questions to be answered by you are:

"First, were any one or more of these roads in question established by a preponderance of the evidence, as public highways in accordance with the Colorado statute which states:

'The following are declared to be public highways: . . . (c) All roads over private lands that have been used adversely without interruption or objection on the part of the owners of such lands for twenty consecutive years.'

prior to the year 1960. If your answer is 'no' that no such public roads were established prior to the year 1960 by adverse use, you will find for the plaintiff.

"If you find that any one or more of the roads were established by adverse use, you will next consider whether or not any one or more of these roads were abandoned and if you find that any one or more of the roads have been abandoned, you shall find for the plaintiff as to that road or those roads.

"If you find the roads were established by adverse use and were not abandoned, the barricades constructed by plaintiff were unlawful and the removal thereof by defendants did not constitute an unlawful trespass and your verdict should be in favor of defendants and against the plaintiff.

. . . . .

"If you find in favor of the plaintiff on his claim of trespass, then you shall assess as damages, an amount which will fairly and justly compensate him for any damages which he suffered as shown by a preponderance of the evidence and which were proximately caused by the unlawful trespass.

"The burden of proof is upon the plaintiff to prove by a preponderance of the evidence the nature and amount of the damages he suffered as a proximate result of any unlawful trespass by the defendants and any award for damages must be based on probability and not possibilities.

"An award may not be based on surmise, speculation or conjecture.

"If you find there was an unlawful trespass by the defendants and the plaintiff has not sustained the burden of proving damages, you shall award him nominal damages in the amount of one dollar.

"If you find in favor of the plaintiff, Jack T. Taylor, and award him actual damages for his claim of trespass, then you should

consider whether the plaintiff is entitled to exemplary damages. If you also find beyond a reasonable doubt that the injury complained of was attended by circumstances of malice or a wanton or reckless disregard of the rights and feelings of the plaintiff, then in addition to any actual damages, you may also award the plaintiff a reasonable sum as exemplary damages.

"Exemplary damages are not to be construed as compensation to the plaintiff for wrong done, but as punishment to the defendant, and as an example to others."

The jury returned a verdict, finding that the four roads in question were not public highways as contended by the County Commissioners; that the plaintiff did not sustain the burden of proving compensatory damages and under the Court's instruction, awarded nominal compensatory damages in the amount of $1.00, and exemplary damages in the amount of $4,000.00.

The defendants filed a motion for a new trial and to alter and amend the judgment and a separate motion for judgment notwithstanding the jury's verdict.

Upon a consideration of these motions, the Court determined that only two questions were raised which required further consideration. They are:

1. Whether or not the trial record establishes that the matter in controversy exceeds the sum or value of $10,000.00, which is necessary for this Court's jurisdiction; and

2. whether or not the Court may permit the award of $4,000.00 exemplary damages to stand.

The Court requested counsel to submit briefs on these two questions. The briefs have been received and considered by the Court and for the reasons hereinafter set forth, the Court finds that the record sufficiently establishes the jurisdictional amount and that the exemplary damages should be reduced to $5.00.

## 1. JURISDICTION

Diversity jurisdiction as regulated by 28 U.S.C. § 1332 requires as one prereq-uisite that the value of the "matter in controversy" exceed $10,000.00. The dismissal of claims which fail to reach the jurisdictional amount is discussed in *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288–90, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938):

"The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. The inability of the plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. . . . But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed, or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, . . . the suit will be dismissed. Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction." (footnotes omitted)

These rules state the controlling law in the Tenth Circuit. *See, e. g., Fehling v. Cantonwine*, 522 F.2d 604 (10th Cir. 1975). The defendant, or the court on its own motion, may question the existence of the jurisdictional amount at any time in the proceedings. Rule 12(h)(3), Fed.R.Civ.P. Once a challenge has been made the plaintiff has the burden of showing that his claim is sufficient to survive the "legal certainty" test. *Gibson v. Jeffers*, 478 F.2d 216 (10th Cir. 1973); *Emland Builders, Inc. v. Shea*, 359 F.2d 927 (10th Cir. 1966).

Regardless of the date of an objection, the Court makes its determination of jurisdiction as of the date the action was commenced. *Emland Builders, Inc. v. Shea*, 359 F.2d 927 (10th Cir. 1966); 14 Wright, Miller and Cooper, Federal Practice and

Procedure § 3702 at 379 (1976). The testimony and evidence submitted during trial, however, may be used to show that the plaintiff, to a legal certainty, never had a $10,000 claim. In such cases the suit must be dismissed, even though the jury has deliberated and returned a verdict. *City of Boulder v. Snyder*, 396 F.2d 853 (10th Cir. 1968), *cert. denied*, 393 U.S. 1051, 89 S.Ct. 692, 21 L.Ed.2d 693 (1969); *F & S Const. Co. v. Jensen*, 337 F.2d 160 (10th Cir. 1964); *Francis v. Bothwell*, 263 F.Supp. 354 (D.Colo.1967).

■■ The defendants in this suit have denied the jurisdiction of this court throughout the proceedings. In their brief, defendants argue that the failure of the plaintiff to substantiate his damages during discovery, his failure to comply with a Magistrate's order compelling discovery, and his failure to present credible proof of his damages at trial show that the plaintiff was never entitled to $10,000 in damages and that dismissal is required. It is unnecessary to consider these arguments, for in a case such as this where injunctive relief is requested the value of the "matter in controversy" may be gauged by the value of the right to be enforced or protected by the injunction, and is not limited to the damages claimed by the plaintiff. 14 Wright, Miller and Cooper, Federal Practice and Procedure § 3708 (1976). In a quiet title action, for example, the sum in controversy is the value of plaintiff's property. *A. C. McKoy, Inc. v. Schonwald*, 341 F.2d 737 (10th Cir. 1965). The value of the rights at stake need not be shown with absolute certainty. *Martinez v. Richardson*, 472 F.2d 1121 (10th Cir. 1973); *Premier Indus. Corp. v. Texas Indus. Fastener Co.*, 450 F.2d 444 (5th Cir. 1971). As a result the courts appear willing to ease the plaintiff's burden of proving jurisdiction. In *Martinez v. Richardson*, 472 F.2d 1121 (10th Cir. 1973), for example, the Tenth Circuit considered whether federal jurisdiction existed under 28 U.S.C. § 1331 in a suit to enjoin HEW from terminating certain home health care benefits. In reply to the defendants' allegation that less than $10,000 was at stake, the court took what amounted to judicial notice of the high costs of home medical services to conclude that jurisdiction existed.

■ The plaintiff in this suit requests equitable relief in the form of injunctions against the defendants' claim of the right to open, operate and maintain the roads in question for the use of the public.

In *Sanchez v. Taylor*, 377 F.2d 733 (10th Cir. 1967), an earlier quiet title action involving the Taylor Ranch, the circuit court noted:

> "It cannot seriously be contended that [the] requisite jurisdictional amount does not exist respecting this 77,524 acre tract of land for which Taylor paid $497,-700.93." 377 F.2d at 736.

Although only a portion of the ranch property is at issue in this suit, the plaintiff is seeking to vindicate an exclusive right to control several miles of roadway upon his valuable property. Under the flexible standards of *Sanchez* and *Martinez, supra*, the Court concludes that the matter in controversy has a value in excess of $10,000 and that this Court has jurisdiction.

## 2. PUNITIVE DAMAGES

■ The award of punitive damages in a diversity suit is governed by the law of the state in which the federal court sits. 1A Moore's Federal Practice para. 0.310 at 3403 (2d ed. 1977).

■ In Colorado no award of punitive damages is appropriate unless the plaintiff has suffered actual damages. *Leo Payne Pontiac, Inc. v. Ratliff*, 29 Colo.App. 386, 486 P.2d 477 (1971), *modified*, 178 Colo. 361, 497 P.2d 997 (1972). In *McConathy v. Deck*, 34 Colo. 461, 83 P. 135 (1905) Colorado followed the "liberal" branch of a split of authority by holding that the amount of actual damage need not be found: even though no award was made for actual damages, if the court found facts which showed that actual damages were incurred, punitive damages could be awarded. This precedent was overruled in essence in *Livingston v. Utah-Colorado Land & Live*

*Stock Co.,* 106 Colo. 278, 103 P.2d 684 (1940). In *Ress v. Rediess,* 130 Colo. 572, 278 P.2d 183 (1954) *Deck* was overruled expressly. The court reasoned that if the plaintiff sustained actual damages

"then there is no logical reason why the damages could not be measured even though nominal. Damage is the basis for a finding that it is either actual or exemplary. If there is no damage susceptible of measurement or determination, a verdict for either cannot stand." 130 Colo. at 579, 278 P.2d at 186.

It therefore appears that there must be an actual *award* of damages, if only nominal, before any exemplary damages are allowable.

■ A second requirement of Colorado law is that the actual damages and punitive damages must bear a relationship to each other. *Kresse v. Bennett,* 151 Colo. 549, 379 P.2d 807 (1963). There is some ambiguity whether the reasonableness of a punitive award should be gauged by the plaintiff's monetary recovery for actual damages or by the extent of the plaintiff's injury as established during trial. Language in several cases requires that the "punishment" must be "commensurate with the injury done"—implying that the court can disregard what it perceives to be an inadequate actual damage award and uphold a sizeable punitive award. *See, e. g., Kresse v. Bennett, supra,* and cases cited therein. Even in these cases, however, the actual determination of reasonableness was made by comparing the jury award for actual damages with the punitive award. This method would be consistent with the logic of *Ress v. Rediess, supra,* and is the method clearly contemplated in recent appellate court decisions. *See Enright v. Groves,* Colo.App., 560 P.2d 851 (1977); *Leo Payne Pontiac Inc. v. Ratliff,* 29 Colo.App. 386, 486 P.2d 477 (1971), *modified,* 178 Colo. 361, 497 P.2d 997 (1972). I conclude, therefore, · that the plaintiff's monetary recovery for actual damages is the touchstone for evaluating the reasonableness of exemplary damages.

■ It is clear that no precise mathematical ratio has been established as the boundary of reasonableness. It also appears that the degree of the defendants' malice, the gravity of the plaintiff's injury, and the desire to devise a meaningful punishment for the defendant influence the size of the exemplary award a court will uphold. See Judge Doyle's discussion of Colorado law in *Wegner v. Rodeo Cowboys Assoc.,* 290 F.Supp. 369 (D.Colo.1968), *aff'd,* 417 F.2d 881 (10th Cir. 1969), *cert. denied,* 398 U.S. 903, 90 S.Ct. 1688, 26 L.Ed.2d 60 (1970); *Leo Payne Pontiac, Inc. v. Ratliff, supra.*

In *Page v. Yool,* 28 Colo. 464, 65 P. 636 (1901), a landlord sought to hasten the departure of his evicted tenants by having one wall of the rented building torn down. Although this incident occurred in the middle of winter, the tenants stayed on until the end of their term and sued for damages resulting from the landlord's actions. The jury awarded $50 actual damages and $4,950 exemplary damages. Terming the verdict "unconscionable" the Colorado Supreme Court reversed the judgment. *See also Starkey v. Dameron,* 92 Colo. 420, 21 P.2d 1112 (1938) (award of $2,000 exemplary struck down as disproportionate to a $100 award for actual damages); *Barnes v. Lehman,* 118 Colo. 161, 193 P.2d 273 (1948) (award of $2,000 exemplary and $500 actual held disproportionate). The highest allowable ratio I have found was the 6:1 ratio upheld by the circuit court in *Big O Tire Dealers, Inc., v. Goodyear Tire & Rubber Co.,* 561 F.2d 1365 (10th Cir. 1977).

■ In the instant case, the jury found that the plaintiff suffered only nominal actual damages. I therefore conclude that only an award of nominal punitive damages can be sustained and that the sum of $5.00 would be appropriate.

## ORDER

IT IS THEREFORE ORDERED that the defendants' motion to alter and amend the judgment by reducing the award of $4,000.00 for exemplary damages is hereby granted, and the award of exemplary damages in the amount of $4,000.00 is hereby reduced to $5.00.

IT IS FURTHER ORDERED that except for the reduction of the award of exemplary damages, the defendants' motion for a new trial and to alter and amend the judgment and their motion for judgment notwithstanding the verdict, are hereby denied.

IT IS FURTHER ORDERED that an amended judgment be entered herein in accordance with this opinion awarding a money judgment to the plaintiff and against the defendants, Sam Gonzales, Roy D. Martinez, also known as Ray D. Martinez and Ruben Pacheco, jointly and severally for $1.00 as compensatory damages and $5.00 for exemplary damages and for the plaintiff's costs to be taxed by the Clerk of the Court upon the filing of a Bill of Costs.

IT IS FURTHER ORDERED that judgment enter in favor of the plaintiff and against the Board of County Commissioners of the County of Costilla, State of Colorado, and their agents, servants, employees and successors in office for injunctive relief as prayed for in the plaintiff's complaint.