Amos COX, Plaintiff,

v.

KANSAS GAS AND ELECTRIC
COMPANY, Defendant.

Civ. A. No. 83–2019.

United States District Court,
D. Kansas.

Jan. 7, 1986.

Larry M. Brummet, Jay T. Grodsky, Kansas City, Mo., and William R. Coffee, Overland Park, Kan., for plaintiff.

Ralph Foster and J. Michael Peters, Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This matter is before the court on plaintiff's motions for judgment notwithstanding the verdict or, in the alternative, for a new trial. For the reasons discussed below, we deny both of plaintiff's motions.

Plaintiff brought this action against defendant Kansas Gas and Electric Company (KG & E) for injuries he suffered when his airplane struck overhead power lines maintained by defendant. The power lines were located near the end of, and perpendicular to, the runway at the Halstead Airport, at Halstead, Kansas. In his suit, plaintiff sought actual and punitive damages, arguing that defendant wantonly refused to bury its lines despite its knowledge of the danger they posed to aircraft.

The accident occurred on October 12, 1982, when plaintiff was flying to the airport to have his plane inspected. Plaintiff claimed that, while attempting to land at the airport, his plane was suddenly and unexpectedly forced toward the ground by a burst of windshear. He regained control of the plane, but not before it was very near both to the ground and defendant's overhead lines. Thus, plaintiff stated, he had no choice but to attempt to fly under the power lines. Unfortunately, the plane's tail struck the bottom line, only eight inches from the top of the tail, and the plane stalled and crashed at the end of the runway. Plaintiff suffered severe injuries.

Defendant KG & E denied all responsibility for the accident, arguing that it had only a duty to warn pilots of the presence of the lines and that it had fulfilled that duty by erecting ball markers at the airport. Defendant also argued that the Halstead Jaycees, Inc. ("the Jaycees"), the builders of the airport, were at fault for choosing to build the airport near the overhead lines rather than on a site farther to the north. Furthermore, defendant noted that it had offered to bury the lines if reimbursed $6,000.00 for the expense of burial. However, neither the Jaycees nor

Gustav F. Wiebe, the subsequent owner and operator of the airport, paid for the cost of burial. Defendant also asserted that plaintiff was at fault because he flew his plane on a dangerously low, flat approach to the airport runway, even though he was aware of the presence of the lines. Finally, defendant maintained that, given the weather conditions at the airport at the time of the accident, plaintiff could not have encountered windshear.

The case was tried to a jury of eight persons. Pursuant to the Kansas comparative negligence statute, we instructed the jury to compare the negligence of the following parties:

(1) Defendant Kansas Gas and Electric Company;

(2) Gustav F. Wiebe, the owner and operator of the airport;

(3) The Halstead Jaycees, Inc., the original owner, builder, and operator of the airport; and

(4) Plaintiff, Amos Cox.

The jury found defendant KG & E to be ten percent at fault, the Jaycees to be twenty percent at fault, Wiebe to be ten percent at fault, and plaintiff to be sixty percent at fault. Under the Kansas comparative negligence statute, plaintiff thus could not recover any damages from defendant because the jury found him to be fifty percent or more at fault. K.S.A. 60–258a. Plaintiff urges that the verdict is clearly against the weight of the evidence and that he is therefore entitled to judgment in his favor notwithstanding the verdict. In the alternative, plaintiff seeks a new trial, arguing that he was prejudiced by several rulings of the court.

I. *Plaintiff's Motion for Judgment N.O.V.*

Plaintiff is clearly not entitled to judgment notwithstanding the verdict. Even if we were convinced that plaintiff has made the required showing for judgment n.o.v., which we are not, we would have to deny plaintiff's motion. Rule 50(d) of the Federal Rules of Civil Procedure provides that a party may move for judgment n.o.v. only if

he has also moved for a directed verdict at the close of all the evidence. Plaintiff here simply failed to preserve his right to seek judgment n.o.v. because he did not move for a directed verdict. We must, therefore, deny plaintiff's motion.

II. *Plaintiff's Motion for New Trial.*

A. *Exclusion of Evidence.*

To support his motion for a new trial, plaintiff maintains that several of the court's rulings were both erroneous and prejudicial. Plaintiff initially objects to the exclusion of certain pieces of evidence. First, plaintiff points to the exclusion of a letter dated November 8, 1971, from defendant's employee, Maurice E. Clark, to several other employees of defendant. In the letter, Clark discusses the cost of burying defendant's power lines near the Halstead Airport, expresses concern about the location of the overhead lines near the airport, and notes that defendant's "concern has been expanded by the recent accident which took place at the new Moundridge Airport." Defendant objected, arguing that there was no showing of authenticity or of relevancy. We excluded the letter.

Plaintiff strongly maintains that he sufficiently established the authenticity of the letter and cites several cases to support his position. We need not decide, however, whether plaintiff is correct because plaintiff simply failed to establish the relevancy of that letter to the issues before the jury.

Plaintiff wanted to introduce the letter, with its discussion of the accident at Moundridge, to demonstrate that defendant was aware of the risk of an accident involving a plane and the overhead lines. For the letter to be relevant, however, plaintiff must demonstrate that the accident at Moundridge was substantially similar to plaintiff's accident. *Hale v. Firestone Tire and Rubber Co.,* 756 F.2d 1322 (8th Cir.1985); *Rexrode v. American Laundry Press Co.,* 674 F.2d 826 (1982). We agree with plaintiff that a lesser showing of "similarity" is required when the evidence is introduced on the issue of knowledge than would be

required if the evidence were being introduced to prove "cause." *See, e.g., Campus Sweater and Sportswear Co. v. M.B. Kahn Construction Co.,* 515 F.Supp. 64, 93 (D.S. C.1979). We also acknowledge that "[w]here the issue is one of foreseeability, evidence of what has actually been experienced in the *same or comparable situations* constitutes proof of the greatest probative value." *Gardner v. Q.H.S., Inc.,* 448 F.2d 238 (4th Cir.1971).

■ In the instant case, however, plaintiff made no showing that the Moundridge accident involved a comparable situation. The overhead lines at the Halstead Airport were marked to warn pilots of their presence, plaintiff had flown to the Halstead Airport previously, and plaintiff was aware of the existence of the power lines. It may very well be that the accident at the Moundridge Airport occurred because the utility lines were not marked and the pilot was not aware of their presence. Thus, the reference in the letter to the Moundridge accident may indicate only that defendant recognized the need to mark its overhead lines near airports. In short, without evidence that the accident at Moundridge occurred despite the presence of markers, the letter has no probative value on the issue of defendant's knowledge of the danger posed by marked lines. We also note that, even if the letter is considered along with defendant's answer to Interrogatory No. 8 of plaintiff's second interrogatories to the defendant, the above analysis is not changed; there is simply no showing of substantial similarity.

■ Finally, plaintiff argues that defendant should have borne the burden of establishing that the accident at Moundridge was so dissimilar as to not constitute "knowledge" of the danger at the Halstead Airport. Unfortunately for plaintiff, that position is simply not the law. The plaintiff bears the burden of demonstrating substantial similarity. *See Hale,* 756 F.2d at 1332. In the instant case, plaintiff simply did not meet that burden.

■ Plaintiff next argues that Exhibit No. 7 and Exhibit No. 21 were erroneously excluded from evidence. Exhibit No. 7, a Kansas Airport Directory, shows the location of power lines and their proximity to runways at various airports. Plaintiff argues that this directory was relevant because it shows the large number of overhead utility lines located near airports in Kansas and, thus, is evidence of the wantonness of defendant KG & E.

Plaintiff admits, however, that one cannot tell from the directory which utility owns the power lines near any given airport. As defendant correctly notes, the actions of other utilities are irrelevant to a determination of defendant's negligence. Moreover, the directory bears no relation to defendant's conduct at the Halstead Airport, because that airport is private and the directory lists only public airports. We conclude that Exhibit No. 7 was properly excluded from evidence.

■ Plaintiff's Exhibit No. 21 was a map of defendant's distribution system, which showed the location of all airports and landing strips within that distribution system. Again, we need not decide whether plaintiff properly laid a foundation for the admission of this piece of evidence. The map does not show the actual location of utility lines near airports, nor does it show whether the lines are marked. We agree with defendant that, absent evidence concerning these matters, the map was simply not relevant. Therefore, the exclusion of the exhibit was proper.

### B. *Comparative Negligence.*

Plaintiff also contends that we improperly instructed the jury to compare the fault of Gustav F. Wiebe, the Halstead Jaycees, and plaintiff, with the fault, if any, of defendant. We have reviewed plaintiff's arguments and believe that we properly instructed the jury.

With respect to Gustav Wiebe, plaintiff's position is that we erroneously instructed the jury that Wiebe owed the same duty of care as that owed by the utility. Plaintiff argues that Wiebe owed a lesser duty—a

mere duty to warn—and that this duty was discharged because plaintiff was warned. Plaintiff thus suggests that Wiebe was not at fault as a matter of law.

Plaintiff cites the Kansas Supreme Court's decision in *Weber v. Southwestern Bell Telephone Co.*, 209 Kan. 273, 497 P.2d 118 (1972), for the proposition that the utility has a higher duty than the airport operator to ensure that planes do not strike the utility's power lines. To support his argument that *Weber* stands for that proposition, plaintiff notes that the court affirmed the trial court's directed verdict in favor of the airport operator on the basis that the operator's duty was merely to warn of the danger and that that duty had been fulfilled. The court refused, however, to affirm the trial court's directed verdict in favor of the utility company even though plaintiff had been warned. Plaintiff thus argues that, as a matter of Kansas law, a utility company such as KG & E has a greater duty to guard against dangers presented by its power lines than does the operator of the airport.

■ We agree with plaintiff that in Kansas a utility company does not satisfy its legal duty by providing warnings or markings alone. The *Weber* court made that proposition clear. But plaintiff's suggestion that an operator of an airport never has more than a duty to warn is based on a misreading of the *Weber* opinion.

It is true that in *Weber* the court imposed a lesser duty on the airport operator than it did on the utility company. The court did so, however, because of the particular facts of that case. In discussing the duty owed by the airport operator, the court applied principles of premises law. The operator did not run the airport as a commercial business venture and the court specifically concluded that the plaintiff was at most a mere licensee. Thus, the court held that the plaintiff, as a licensee, was owed only "a duty to be warned of the hazards of the telephone lines...." 209 Kan. at 286, 497 P.2d at 128. Because the defendant airport operator had warned the

plaintiff, the court affirmed the directed verdict in favor of that defendant.

In discussing the duty owed by the utility company, however, the *Weber* court refused to apply premises law. The court noted that:

The only purpose of [the utility company's] occupancy on the [airport operator's] land is to further its own business interests. There would be little or no economic or business reason for any person to enter upon [the utility company's] occupancy so as to afford him the status of an invitee as contemplated by the "premises law." ... The use of "premises law" to delineate [the utility's] duty would in effect define out of existence any affirmative duty it owed to maintain its lines so as not to create or permit dangerous conditions to exist that might cause injury to the public.

*Id.* at 287, 497 P.2d at 129. The court then fashioned a duty based on ordinary negligence and held that a utility company must exercise reasonable care and caution in the maintenance of its lines. *Id.* at 288, 497 P.2d at 130.

In the instant case, we directly derived our instruction with respect to the duty owed by defendant KG & E from the *Weber* opinion. In considering the duty owed by Wiebe, the airport operator, we also applied the *Weber* decision; *i.e.* we applied premises law. Unlike the airport operator in *Weber*, Wiebe owns the Halstead Airport as a commercial enterprise. In fact, the purpose of plaintiff's flight to the Halstead Airport was to have Wiebe inspect plaintiff's airplane. Thus, under premises law, plaintiff was an invitee, not a licensee. We instructed the jury accordingly. Because plaintiff's argument is based on a misreading of the *Weber* opinion, and because plaintiff points to no other reason why our instruction was erroneous, we continue to believe that our instruction with respect to the duty owed by Wiebe was entirely proper.

Plaintiff also suggests that we improperly instructed the jury to compare the fault of the Halstead Jaycees because the Jay-

cees merely had a duty to warn, and that duty was fulfilled. In his brief, however, plaintiff focused all of his arguments on the *Weber* decision and the duty owed by Wiebe, apparently assuming that the Jaycees owed the same duty. He made no specific arguments with respect to our instruction on the duty owed by the Jaycees.

We note that at the time of the accident the Jaycees no longer owned the airport. Thus, unlike Wiebe, the Jaycees' duty was not based on premises law. The Jaycees had, however, selected the site for the airport and constructed it. Moreover, there was evidence that the Jaycees had negligently chosen the location of the airport, placing it further south and closer to the power lines than was necessary. Because ordinary principles of negligence law applied to the Jaycees, we instructed the jury that the Jaycees had a duty to exercise "reasonable care and precaution with respect to the location and construction of the Halstead Airport...." Instruction No. 11.

■ As we noted above, plaintiff made no specific arguments why our Instruction No. 11 was erroneous. In any event, even if that instruction were erroneous, we are convinced that it was harmless error. If all of the fault assessed by the jury to the Jaycees were added to the fault assessed to defendant, the defendant would have been only thirty percent at fault. Clearly, then, our instruction on the duty owed by the Jaycees and our instruction to compare the fault of the Jaycees, even if improper, did not prejudice plaintiff.

Finally, plaintiff argues that we should not have told the jury to compare the negligence of the plaintiff. Plaintiff apparently does not deny that he owed a duty to operate his aircraft in a reasonably safe manner. Plaintiff does, however, argue at great length that there was simply no evidence to suggest that he might have been negligent. Plaintiff's position is without merit.

■ There was abundant evidence from eye witnesses and plaintiff's own testimony that plaintiff flew a long, flat, and low approach in preparing to land at the Halstead Airport. Although the experts admitted that landing approaches often vary, a reasonable jury could have concluded from their testimony that plaintiff was simply flying too low on his approach. The defendant also introduced evidence to place in doubt plaintiff's claim that a sudden, unforeseen burst of windshear caused his plane to drop precipitously. Michael Smith, a meteorologist, stated that such a burst of windshear was not possible given the weather conditions at the Halstead Airport at the time of the accident. Another defense expert testified that the windshear plaintiff experienced, if any, might have been·caused by plaintiff flying his plane dangerously low and close to a hedgerow that paralleled the approach path to the airport. In short, there was ample evidence to allow a jury to find negligence on the part of plaintiff. Therefore, we did not err in instructing the jury to compare plaintiff's fault.

### C. *Verdict Against the Weight of the Evidence.*

■ Plaintiff also maintains that the jury verdict was against the weight of the evidence. Plaintiff argues that defendant was the only party with a legal duty and yet was found to be only ten percent at fault. Plaintiff also argues that the evidence shows that plaintiff did "absolutely nothing wrong." We have already concluded above, however, that defendant was not the only party with a legal duty. We have also noted that there was substantial evidence from which a jury could conclude that plaintiff was primarily at fault. We simply cannot agree, then, that the verdict was against the weight of the evidence.

### D. *Punitive Damages.*

Finally, plaintiff contends that the court erred in sustaining the defendant's motion for directed verdict on the issue of punitive damages at the close of plaintiff's evidence. In his brief, plaintiff raises several objections. First, plaintiff argues that if the

court had allowed plaintiff's Exhibits 7, 21, and 23 into evidence, plaintiff would have had enough evidence to submit the issue of punitive damages to the jury. We have already concluded above, however, that these exhibits were properly excluded. Moreover, even if they had been introduced, these exhibits would have presented no evidence of wanton conduct. The exhibits simply contain no evidence that defendant recognized, yet ignored, the danger posed by marked utility lines.

Second, plaintiff argues that the jury was prejudiced by the court's ruling on defendant's directed verdict motion. In his opening statement, plaintiff told the jury that they were going to be asked to assess punitive damages against the defendant to punish it for its wanton conduct. By directing a verdict on the issue of punitive damages, plaintiff argues, the court "caused plaintiff and his case to lose credibility" and might have caused the jury to believe that "the court did not disapprove of the defendant's conduct in leaving the lines at the end of the landing strip and that the court did not consider the defendant's conduct as being wrong like plaintiff had said." Plaintiff's Memorandum in Support at 11. Obviously, if we were to accept this argument, we would never be able to direct a verdict on punitive damages even if the plaintiff introduced no evidence to support a punitive damage award. We refuse to adopt such a rule.

In any event, we note that the issue of punitive damages is moot. Because the jury found plaintiff to be sixty percent at fault, plaintiff was not entitled to recover actual damages. K.S.A. 60–258a. Kansas law is quite clear that a plaintiff must establish a right to recover actual damages before punitive damages may be awarded. *Lantz v. City of Lawrence*, 232 Kan. 492, 657 P.2d 539 (1983).

For all of the above reasons, we conclude that plaintiff is simply not entitled to a new trial.

IT IS THEREFORE ORDERED that plaintiff's motion for judgment notwithstanding the verdict is denied.

IT IS FURTHER ORDERED that plaintiff's motion for a new trial is denied.