**Craig W. WHITE, Petitioner/Cross–Respondent,**

**v.**

**Gary L. HANSEN, Respondent/Cross–Petitioner.**

**No. 91SC162.**

Supreme Court of Colorado,
En Banc.

Sept. 21, 1992.

Louis A. Weltzer, Stephen R. Ehrlich, Denver, for petitioner, cross-respondent.

Law Office of Gary P. Sandblom, P.C., Gary P. Sandblom, Boulder, for respondent, cross-petitioner.

Justice ERICKSON delivered the Opinion of the Court.

We granted certiorari to review *White v. Hansen,* 813 P.2d 750 (Colo.App.1990), which was an appeal from a judgment in a personal injury action that was tried to a jury. The jury returned a verdict finding that both the plaintiff and the defendant were fifty percent negligent, but awarded exemplary damages to the plaintiff for the defendant's willful and wanton conduct. The district court entered judgment for the defendant on the negligence claim and vacated the verdict for punitive damages. The court of appeals affirmed the district court's judgment for the defendant, Gary L. Hansen (Hansen), but reversed that part of the judgment that vacated the award of exemplary damages [1] to the plaintiff, Craig W. White (White). The three issues to be reviewed on certiorari are:

1. Whether section 13–21–111(1), 6 C.R.S. (1973), of Colorado's comparative negligence statute permits the negligence of one party to be compared to the willful and wanton conduct of another.

2. Whether a statement taken from an injured person in violation of section 13–21–301, 6A C.R.S. (1982 Supp.), may be used by the person taking such statements in an action arising out of the incident causing the injury, when the statement is given by a person who is not a party to the action.

3. Whether the court of appeals erred in ruling that a plaintiff in a personal

---

**1.** Throughout this opinion, we refer to "exemplary damages" and "punitive damages" interchangeably since these terms have the same meaning in common usage.

injury action whose fault is equal to or greater than that of the defendant can still recover exemplary damages.

We answer all three questions in the affirmative. The third issue is of limited precedential value since the enactment of section 13–21–102(1)(a), 6A C.R.S. (1987), and the announcement of *Lira v. Davis*, 832 P.2d 240 (Colo.1992).[2]

Accordingly, we affirm in part, reverse in part, and remand to the court of appeals with directions to affirm the district court's order entering judgment for Hansen and vacating the punitive damage award in favor of White.

## I

In the early morning hours of March 24, 1983, White and a companion, Gund Larsen (Larsen), were walking with their backs to traffic down the travel lanes of a street in Aspen, Colorado, when they were struck by an automobile driven by Hansen. Hansen had been drinking earlier that evening before he commenced his drive home. Both White and Larsen suffered personal injuries, and were hospitalized and received medical treatment for their injuries. White's injuries are the subject of this litigation.

The day following the accident, Larsen, who is not a party to this action, was contacted by an investigator acting on behalf of the car's owner. Larsen gave the representative a statement. Because Larsen returned to her home in Norway she was not available to testify at White's trial. A portion of her statement to the investigator was admitted as a declaration against interest over the objection that section 13–21–301, 6A C.R.S. (1987), barred admission of the statement.[3]

At the conclusion of trial, the jury found that White had suffered $1,000 in actual damages, and awarded $5,000 in exemplary damages pursuant to section 13–21–102, 6 C.R.S. (1973). In awarding the exemplary damages, the jury determined that Hansen's act of driving under the influence of alcohol was "willful and wanton conduct" as that term is defined in the statute.[4] The jury also allocated the percentage of fault for the accident equally to both White and Hansen, finding each fifty percent negligent.

## II

White claims that while it is proper to compare negligent conduct to negligent conduct, willful and wanton misconduct is different in kind from ordinary negligence and should not be considered in reaching an award for comparative negligence. He argues that because the jury found Hansen's conduct to be willful and wanton for purposes of our exemplary damages statute his own negligence should not be compared to Hansen's misconduct. While many jurisdictions, including Colorado, have discussed such distinctions in tort actions, we find that under our comparative fault statute they are not necessary, and do not affect the allocation of fault between the respective parties.

---

**2.** *Lira v. Davis* held, based upon section 13–21–102(1)(a), that exemplary damages cannot exceed the award for compensatory damages. Section 13–21–102(1)(a) was not enacted until after this case was tried.

This section of the comparative negligence statute, as well as the statute limiting the admission of statements taken from an injured person by an investigator for a party to the action was repealed and reenacted in 1986 and is now contained in Title 13, 6A C.R.S. (1987). The changes are not relevant to this appeal.

**3.** The statement in question consisted of the following:

> Question: What kind of clothing did you have on? Did you have light colored clothing or dark colored clothing?
> Answer: Dark.
> Question: Was it snowing very heavily? Would it have been hard for him to see you?
> Answer: Yes, I think so.

**4.** Section 13–21–102 defines willful and wanton conduct as "conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff."

■ The terms willful and wanton misconduct, willful and wanton negligence, gross negligence, reckless conduct, and reckless negligence, were adopted in various formulations by virtually every jurisdiction to combat the injustice brought about by the affirmative defense of contributory negligence. The common thread that separates these fault concepts from ordinary negligence is that the defendant's conduct is so aggravated as to be all but intentional.[5]

The demarcation line between the terms has led to the conclusion that the terms describe a form of aggravated negligence that differs in quality rather than degree from ordinary lack of care. *See* W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 34, at 214 (5th ed. 1984). Our exemplary damages statute recognizes the distinction between negligence and willful and wanton conduct providing for the recovery of exemplary damages in addition to compensatory damages, and prevents contribution between defendants in applicable cases. *See* §§ 13–21–102, 13–50.5–102, 6A C.R.S. (1987).

■ It has never been the law in Colorado that, in ordinary negligence cases,[6] willful and wanton misconduct or reckless misconduct barred the application of contributory negligence. Rather, we have consistently held that willful conduct not rising to the level of an intentional tort would not protect a negligent plaintiff from the application of the contributory negligence defense. *See Healy v. Hewitt,* 101 Colo. 92, 71 P.2d 63 (1937); *Denver & R.G.R.R. Co. v. Spencer,* 25 Colo. 9, 52 P. 211 (1898).

In *Healy,* we held that a complaint charging a defendant with wanton and/or willful disregard of the rights and safety of others is not the equivalent of an allegation of willful or intentional injury. We held an instruction that contributory negligence would not bar plaintiff's claim if it found that the defendant's conduct was wanton, willful or reckless[7] was reversible error because "negligence is never anything more than negligence." *Healy,* 101 Colo. at 98, 71 P.2d at 66.

Contributory negligence imposed a severe penalty on a plaintiff whose ordinary or simple negligence provided the basis for a defense of contributory negligence as a bar to recovery even though the defendant's negligence was gross, reckless, or

---

5. Black's Law dictionary provides general definitions of:

Gross Negligence: The intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another; such a gross want of care and regard for the rights of others as to justify the presumption of willfulness and wantonness.

Wanton Negligence: Reckless indifference to the consequences of an act or omission, where the party acting or failing to act is conscious of his conduct and, without any actual intent to injure, is aware, from his knowledge of existing circumstances and conditions, that his conduct will inevitably or probably result in injury to another.

Willful Negligence: Though rejected by some courts and writers as involving a contradiction of terms, this phrase is occasionally used to describe a higher or more aggravated form of negligence than "gross." It then means a willful determination not to perform a known duty, or a reckless disregard of the safety or the rights of others, as manifested by the conscious and intentional omission of the care proper under the circumstances.

Black's Law Dictionary 1185–86 (4th ed. 1968).

6. With the exception of several cases decided under our now repealed automobile guest statute, we established that contributory negligence was a complete defense even though the plaintiff's own negligence was slight and the defendant's negligence was gross or willful. On the other hand, it is also well settled that actions founded on intentional misconduct by the defendant were not subject to the defense of contributory negligence and are not subject to comparative fault principles. *See Carmen v. Heber,* 43 Colo.App. 5, 601 P.2d 646 (1979).

7. Instruction number 19 read as follows:

You are instructed that if you find from a preponderance of the evidence that the plaintiff suffered injury and damage and such injury and damage were caused by wanton, wilful or reckless acts or conduct on the part of the defendant in operating his said automobile, the plaintiff may recover for said injury and damage even though you find by a preponderance of the evidence that plaintiff was guilty of contributory negligence.

willful. In response to this inequity, the General Assembly enacted section 13–21–111, 6 C.R.S. (1973), entitled "Negligence cases—comparative negligence as measure of damages." *See Mountain Mobile Mix, Inc. v. Gifford,* 660 P.2d 883 (Colo.1983); *Darnell Photographs, Inc. v. Great American Ins. Co.,* 33 Colo.App. 256, 519 P.2d 1225 (1974). When the General Assembly adopted the comparative negligence statute in 1971 it was aware of our prior decisions which refused to recognize distinct degrees or qualities of negligence for purposes of barring claims of contributory negligence. *See Rauschenberger v. Radetsky,* 745 P.2d 640, 643 (Colo.1987); *Thompson v. People,* 181 Colo. 194, 510 P.2d 311 (1973). Had the legislature intended to differentiate between the quality of negligent conduct for purposes of comparing the parties' fault, it would have done so.

■■■ To determine comparative negligence, the trier of fact must allocate the weight to be assigned each party's conduct.[8] We believe, as a majority of the courts and commentators do, that labels assigned to negligent conduct serve only to distract the trier of fact from a proper determination of comparative fault. *See Sorenson v. Allred,* 112 Cal.App.3d 717, 169 Cal.Rptr. 441 (1980) (noting that the elimination of such "buzz" words as willful misconduct, causes the focus to be on the real issue—the degrees of fault of each party); *Downing v. United Auto Racing Ass'n,* 211 Ill.App.3d 877, 156 Ill.Dec. 352, 570 N.E.2d 828 (1991). *See also* W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 34, at 210 (5th ed. 1984) ("there are such things as major or minor departures from reasonable conduct; but the difficulty of classification, because of the very real difficulty of drawing satisfactory lines of demarcation, together with the unhappy history, justifies the rejection of distinctions in most situations").

The trier of fact must weigh the conduct of the parties, be it slightly, grossly, recklessly or willfully negligent, and make the appropriate percentage allocation of fault.[9] Therefore, in an action based upon the nonintentional conduct of the defendant, it is not relevant that the trier of fact decides that the defendant engaged in willful and wanton conduct for purposes of awarding exemplary damages under section 13–21–102.[10] If the trier of fact determines the plaintiff's negligence is greater or equal to the defendant's, judgment must be entered in favor of the defendant. If on the other hand, the trier of fact determines the plaintiff's negligence was less than the defendant's, an award of compensatory damages may be made, the amount of which will be offset by the percentage of the plaintiff's fault, if any. In our view, if the plaintiff

---

**8.** We realize that there will be limited instances in which the facts will be undisputed, reasonable minds could draw but one inference, and the relative degrees of fault may be determined as a matter of law. *Lyons v. Nasby,* 770 P.2d 1250 (Colo.1989). We do not attempt here to alter these situations.

**9.** We agree with one commentator's statement that

the Colorado comparative negligence system ... has retained the legal precept that one should not recover if he is equally at fault, and yet has allowed the harsh barriers of strict contributory negligence to be lowered somewhat. In this manner the jury, as the proper social and legal instrument of the community, may fairly measure proportionate individual fault and assess damages as they are proved by the evidence. The system appears to be quite workable, and seems to fairly compromise the interests of all parties.

Richard W. Laugesen, *Colorado Comparative Negligence,* 48 Denv.L.J. 469 (1972).

**10.** It should be noted that the jury is only instructed as to willful and wanton conduct as it relates to the defendant's conduct, and only for the purpose of determining whether exemplary damages should be awarded. There is no corresponding jury instruction for the plaintiff's conduct. Thus, if the jury found the plaintiff's own fault rose to the level of willful conduct, it would have no ability to so inform the court. That the jury is not instructed as to degrees of fault for purposes of determining percentages of fault is, we believe, an example of the underlying concept of comparative negligence; that one party's fault is compared to the other's, regardless of the relative degree of that fault.

prevails on the underlying claim and the trier of fact finds the defendant acted willfully and wantonly, exemplary damages may be awarded under section 13–21–102.

## III

■ White claims the admission into evidence of portions of a hearsay statement given by Larsen to an investigator was error. There is no dispute that the statement in question is hearsay and allegedly was taken from Larsen in violation of section 13–21–301(1).[11] The question is whether the statement taken from Larsen may be admitted into evidence in White's action for personal injuries against Hansen when Larsen is not a party to the action.

Section 13–21–301(2) provides that any statement taken from the injured party in violation of the statute may not be used in evidence against the interest of the injured party in any civil action relating to the injury. The court of appeals correctly determined that the plain language of the statute only prohibits the use of such statements against the interests of the injured party in the personal injury action. Therefore, the court of appeals held that "the statute does not preclude the use of the statement, if otherwise admissible, against a party who is not the injured individual who made the statement." *White*, 813 P.2d at 754. We agree.

■ In construing section 13–21–301, our task is to discern the intent of the General Assembly. *Safeway Stores, Inc.*

*v. Smith*, 658 P.2d 255 (Colo.1983). In *Safeway*, the court held that a statement by an injured plaintiff that was obtained in violation of section 13–21–301 was inadmissible. We did not address or rule on the admissibility of a statement by an injured person or patient who was not a party to the action. Section 13–21–301(1) uses the word "person," which would include the "injured patient" in sections 13–21–301(1)(a), (b), and (c), and the "injured party" in section 13–21–301(2). The issue in *Safeway* did not require us to consider the distinction between "person," and "injured patient" or "injured party." Here, we must determine whether Larsen's statement was covered by the provisions of section 13–21–301(2). It is undisputed that Larsen was a person who was injured, hospitalized as a patient, and received medical treatment, but was not a party to White's action against Hansen for personal injuries. In affirming the district court's admission of Larsen's statement, the court of appeals noted that "the legislative history [of section 13–21–301] demonstrates that the General Assembly intended to limit the exclusion of statements of injured parties to only those parties who were confronted with their own statements." *White*, 813 P.2d at 754. The court of appeals correctly determined the legislative intent based upon the legislative history of section 13–21–301 and for that reason, we affirm the court of appeals decision upholding the admission of Larsen's statement.[12]

## IV

The district court, in denying White exemplary damages, found as a matter of law

---

**11.** Section 13–21–301 reads in relevant part as follows:

(1) If a person is injured as a result of an occurrence which might give rise to liability and said person is under the care of a practitioner of the healing arts or is hospitalized, no person or agent of any person whose interest is adverse to the injured person, within fifteen days from the date of the occurrence causing injury shall:
. . . .
(c) Obtain or attempt to obtain any statement, either written or oral, recorded or otherwise, from the injured patient for use in negotiating a settlement or obtaining a release except as provided by the Colorado rules of civil procedure.

**12.** Section 13–21–301(2) was amended by the House Judiciary Committee. The amendment, which was introduced by Representative Hobbs, added the language "against the interests of the injured party" after "evidence" in line four of subsection (2). In introducing the amendment, Representative Hobbs made the following statements:

I think the only interest we are trying to protect is the interest of the injured party in not having a statement taken while he is in the hospital or something like that used against him, but it might be used against somebody else in a civil action relating to the injury, or it might be used in favor of the injured party.
. . . .

that because White was not entitled to recover compensatory damages, he could not recover exemplary damages. In support of its ruling, the district court cited *Cox v. Kansas Gas & Electric Co.*, 630 F.Supp. 95 (D.Kan.1986) (holding issue of punitive damages was moot where jury found plaintiff to be sixty percent at fault, thereby rendering him unable to recover actual damages under Kansas law) and *Tucker v. Marcus*, 142 Wis.2d 425, 418 N.W.2d 818 (1988) (disallowing punitive damages where there has been no award of actual or compensatory damages; saying that it is not enough that actual damages may have been suffered or sustained).

The court of appeals reversed the district court's ruling and reinstated the jury's assessment of $5,000. In doing so, the court of appeals held that, if there is an injury or other damage which is quantified and stated by the jury, and the defendant is guilty of willful and wanton misconduct, the plaintiff may recover exemplary damages. The court of appeals reasoned that there is no requirement that the plaintiff actually receive money from the compensatory damage assessment, only that the damage be monetarily quantified by a jury. *White v. Hansen*, 813 P.2d 750, 753 (Colo.App.1990).

The rule cited by the court of appeals in support of its decision states that actual damages, even if only nominal, must be shown by the evidence and awarded to the plaintiff on the underlying negligence claim before there can be a basis for an exemplary damage award. *Carey v. After the Gold Rush*, 715 P.2d 803 (Colo.App.1986). *See also Livingston v. Utah–Colorado Land & Live Stock Co.*, 106 Colo. 278, 103 P.2d 684 (1940) (upholding exemplary damage award because there were sufficient facts showing that the plaintiff had sus-

tained actual damage even though the amount of actual damages were never determined). Therefore, the court of appeals reasoned that, since the jury "assessed" the value of White's injuries at $1,000, even though he could not legally collect on that assessment because judgment had been entered in favor of Hansen under the comparative negligence statute, White could still be awarded exemplary damages.

■ Section 13-21-102 provides for the award of exemplary damages in all civil actions in which compensatory damages are assessed and the injury complained of is attended by the statutory aggravating circumstances. The purpose in awarding punitive damages is not to compensate an injured plaintiff, but to punish the defendant and to deter others from similar conduct in the future. *Leidholt v. District Court*, 619 P.2d 768 (Colo.1980). However, the exemplary damages statute does not create a separate legal right; rather it is only applicable when the plaintiff is successful on the underlying claim for actual damages. *Palmer v. A.H. Robins Co.*, 684 P.2d 187 (Colo.1984); *Harding Glass Co. v. Jones*, 640 P.2d 1123 (Colo.1982). *See also Armijo v. Ward Transport*, 134 Colo. 275, 302 P.2d 517 (1956) (holding that exemplary damages could not be recovered because no compensatory damages could be awarded against the defendants); *Ress v. Rediess*, 130 Colo. 572, 278 P.2d 183 (1954) (finding that when judgment for actual damages is extinguished, the basis upon which exemplary damage could rest is likewise extinguished); *Denman v. Burlington N. R.R. Co.*, 761 P.2d 244 (Colo.App.1988) (award of exemplary damages rendered moot when defendant found not negligent).

■ In *Lira v. Davis*, 832 P.2d 240 (Colo.1992), we addressed the question of

What we are basically protecting is the interest of the injured party being bound by some statement he might make before he understands the nature of his injuries.

. . . .

When you're absolutely foreclosing the use of that evidence I get a little bit frightened and I don't see any reason to foreclose the use of the evidence in this instance as against any-

one's interest except the injured party's interest.

*Hearings on H.B. 1073 Before the House Judiciary Committee*, 50th Gen.Assembly, 1st Reg.Sess. (audio tape 75–24, Feb. 11, 1975, at 3:50–4:20 p.m.). The vote by the Judiciary Committee on the amendment was unanimous and the bill was enacted in its amended form.

whether the comparative negligence statute applies to reduction of exemplary awards under section 13–21–102 as amended in 1986. In our analysis of that issue, we discussed *Tucker v. Marcus*, 142 Wis.2d 425, 418 N.W.2d 818 (1988), and agreed with the Wisconsin Supreme Court determination that "the term 'award' means a remedy recoverable in accordance with an order of judgment, not the amount of compensatory damages initially determined by the jury." *Lira*, 832 P.2d at 245. Thus, since section 13–21–102 provides that a jury may award a party reasonable exemplary damages in an amount not to exceed the actual damages awarded, it necessarily means that there must be an underlying judgment for actual damages to support the award of exemplary damages. Since judgment was entered in favor of Hansen, and not in favor of White, there is no applicable judgment from which an "award" of exemplary damages can be made to White.

■ We do not accept the court of appeals exception predicated on *Palmer, Harding Glass*, and *Ress* for purposes of the comparative negligence statute. The court of appeals concluded that the purpose underlying the exemplary damages statute would not be served if plaintiffs were able to recover the full amount of an exemplary award if they were only forty-nine percent negligent, yet none of the exemplary award if they were fifty percent negligent. We do not agree. Since the comparative negligence statute is not a "pure" comparative formulation, the legislature properly delineated fifty percent as the point at which the plaintiff could not recover damages he himself has caused. *Mountain Mobile Mix, Inc. v. Gifford*, 660 P.2d 883, 888 (Colo.1983). We find no basis for concluding that the legislature intended to allow recovery for exemplary damages when the defendant is not liable for actual damages.

Accordingly, we affirm the court of appeals in part, reverse in part, and remand to the court of appeals with directions to affirm the district court's judgment for

Hansen and the order vacating the punitive damage award in favor of White.