STEPHEN FALKNER, Adm'r of the Estate of Robert D. Falkner, Plaintiff-Appellant, v. HINCKLEY PARACHUTE CENTER, INC., *et al.*, Defendants-Appellees.

Second District No. 2—88—0309

Opinion filed January 10, 1989.

Peter Thomas Smith, of Sycamore, for appellant.

Hugh G. McBreen, of McBreen & McBreen, of Chicago, for appellees.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiff, Stephen Falkner, administrator of the estate of Robert D. Falkner, appeals from an order of the circuit court of Kane County granting a motion for summary judgment in favor of defendants, Hinckley Parachute Center, Inc. (Hinckley Parachute), and James E. Baron, its president, in plaintiff's wrongful death and survival actions alleging negligence and wilful and wanton conduct arising from Robert D. Falkner's death in a parachute jump during a course operated by defendants. The circuit court found that the actions were barred based upon an agreement containing exculpatory clauses signed by the deceased.

Plaintiff raises three issues for review: (1) whether genuine issues of material fact exist concerning what risks were assumed and what acts were exempted from liability based on the exculpatory clauses; (2) whether the exculpatory clauses were too vague and uncertain to exempt defendants from liability for the activities alleged to have caused decedent's death; and (3) whether, as to the wilful and wanton counts, the exculpatory clauses are void as contrary to public policy.

Plaintiff's complaint, as amended, alleged that Hinckley Parachute operates a school for the instruction and training of students in parachuting and sky diving; that James E. Baron, president and principal instructor, supervises all aspects of the school; that Hinckley Parachute provides its students with the parachute equipment, aircraft, and supervising personnel necessary for their training; and that Robert D. Falkner, while a student of Hinckley Parachute and while under the instruction and supervision of defendants, fell to his death on July 6, 1983, because the parachute provided by defendants became entangled and did not slow his fall. Plaintiff further alleged in counts I and II of the wrongful death (Ill. Rev. Stat. 1983, ch. 70, pars. 1, 2) and survival actions (Ill. Rev. Stat. 1983, ch. 110½, par. 27—6) that defendants were negligent by improperly and inadequately instructing decedent in the type of parachute equipment he was given to use, by improperly and inadequately warning decedent of the hazards of jumping with the type of parachute equipment he was given to use, and by improperly and carelessly giving deceased a parachute which contained a bridle cord that was too long for a novice parachutist of his size, weight, and experience. In counts III and IV, also wrongful death and survival actions, plaintiff alleged wilful and wanton misconduct based upon defendants' conscious and knowing disregard of a substantial and unjustifiable risk regarding the conditions and circumstances existing at the time of the occurrence which was a gross deviation from the standard of care which an approved United

States Parachute Association instructor would exercise in a similar situation. Plaintiff, thereafter, filed a more definite statement of the actions alleged to be wilful and wanton in counts III and IV.

Following the filing of their answer, defendants filed a motion for summary judgment. Attached thereto was a copy of a one-page document entitled "Hinckley Parachute Center, Inc. Training Agreement" (training agreement) signed by decedent and the affidavit of Drew Dunham, which states that Dunham witnessed the signing of the training agreement by decedent. Also referred to in the motion was a previously filed affidavit by James E. Baron which states that he informed all students that they must read and sign the training agreement before they can participate in any parachuting activities.

In response, plaintiff filed a memorandum of law incorporating previous arguments made in opposition to prior motions and the affidavit of Doris M. Falkner, decedent's widow. Pertinent hereto, the affidavit states that decedent was 65 years old at the time of his death; that he had been a commissioned officer and pilot in World War II and the Korean War; that he had limited parachute training during World War II in which he had jumped three to four times, but never had free-fall instruction and had not jumped for 39 years until his involvement with Hinckley Parachute; and that Hinckley Parachute distributed an advertising brochure which, in part, indicates the sport of parachuting is generally safe if proper procedures are followed.

The circuit court granted defendants' motion for summary judgment on all four counts finding that the exculpatory clauses in the training agreement barred plaintiff's decedent from recovery for the occurrence complained of.

The training agreement signed by decedent contains the following pertinent clauses:

"3. THE PARACHUTE JUMP. The HINCKLEY PARACHUTE CENTER INC. will provide equipment, aircraft, and supervisory personnel for the Student's initial parachute descent.

* * *

5. REPRESENTATIONS AND WARRANTIES.

a. The HINCKLEY PARACHUTE CENTER INC., represents and warrants that all instruction in the Course shall be under the supervision of an Instructor United States Parachute Association (USPA) Qualified and the Student's initial parachute jump shall be made under the supervision of a Jumpmaster USPA Qualified.

b. The student represents and warrants that he or she has

no physical infirmity, and is not under treatment for any physical infirmity or chronic ailment or injury of any nature, and has never been treated for any of the following: cardic [sic] or pulmonary conditions or disease, diabetes, fainting spells or convulsions, nervous disorder, kidney or related disease, high or low blood pressure.

\* \* \*

6A ASSUMPTION OF RISK. The student knows and understands the scope, nature, and extent of the risks involved in the activities contemplated by this Agreement and voluntarily and freely chooses to incur such risks.

7A EXEMPTION FROM LIABILITY. The Student exempts and releases the HINCKLEY PARACHUTE CENTER INC. its officers, agents servants and employees from any and all liability claims, demands, or actions or causes of action whatsoever arising out of any damage, loss or injury to the Student or the Student's property while upon the premises or aircraft of the HINCKLEY PARACHUTE CENTER INC. or while participating in any of the activities contemplated by this agreement, whether such loss, damage, or injury results from the negligence of the HINCKLEY PARACHUTE CENTER INC., its officers, agents, servants, or employees or from some other cause.

8A COVENANT NOT TO SUE. The Student agrees never to institute any suit or action at law or otherwise against the HINCKLEY PARACHUTE CENTER INC., its officers, agents, servants or employees not to initiate or any way assist the prosecution of any claim of damages or cause of action which the Student, the Student's heirs, executors or administrators hereafter may have by reason of injury to the person of the Student or to the Student's property arising from the activities contemplated by this agreement.

9A INDEMNITY AGAINST THIRD PARTY CLAIMS. The Student will indemnify, save and hold harmless the HINCKLEY PARACHUTE CENTER INC., its officers, agents, servants or employees from any and all losses, claims, actions, or proceedings of every kind and character which may be presented or initiated by any other persons or organizations and which arise directly or indirectly from the activities of the Student while engaged in the activities contemplated by this Agreement.

10A CONTINUATION OF OBLIGATIONS. The Student agrees and acknowledges that the terms and conditions of the

foregoing ASSUMPTION OF RISK, EXEMPTION FROM LIABILITY, COVENANT NOT TO SUE, and INDEMNITY AGAINST THIRD PARTY CLAIMS shall continue in full force and effect now and in the future at all times during which the Student participates, either directly or indirectly, in the parachuting and aviation activities of the HINCKLEY PARACHUTE CENTER INC. and shall be binding upon the heirs, executors, and administrators of said Student or his estate."

■ Generally, contracts exculpating a party from liability from common law negligence claims will be enforced unless it would be against a settled public policy of this State to do so or there is something in the social relationship of the parties militating against upholding the agreement. (*Harris v. Walker* (1988), 119 Ill. 2d 542, 548, 519 N.E.2d 917; *Schlessman v. Henson* (1980), 83 Ill. 2d 82, 86-87, 413 N.E.2d 1252; *Calarco v. YMCA* (1986), 149 Ill. App. 3d 1037, 1039-40, 501 N.E.2d 268.) More specifically, such exculpatory agreements have been upheld in the context of parachuting activities where the language of the agreement sets forth in clear language the range of activities to which it applies. *Randle v. Hinckley Parachute Center, Inc.* (1986), 141 Ill. App. 3d 660, 662-63, 490 N.E.2d 1041; *Poskozim v. Monnacep* (1985), 131 Ill. App. 3d 446, 448-49, 475 N.E.2d 1042.

■ An exculpatory agreement constitutes an express assumption of risk insofar as the plaintiff has expressly consented to relieve the defendant of an obligation of conduct toward him. (See *Russo v. The Range, Inc.* (1979), 76 Ill. App. 3d 236, 238, 395 N.E.2d 10.) The doctrine of assumption of risk presupposes that the danger which caused the injury was one which ordinarily accompanies the activities of the plaintiff and that the plaintiff knew, or should have known, that both the danger and the possibility of injury existed before the occurrence. (*Larsen v. Vic Tanny International* (1984), 130 Ill. App. 3d 574, 576, 474 N.E.2d 729; *Russo*, 76 Ill. App. 3d at 237, 395 N.E.2d at 12.) Whether an injury is one which ordinarily accompanies certain activities and whether a plaintiff appreciates the risks involved may constitute questions of fact, precluding summary judgment. See, e.g., *Russo*, 76 Ill. App. 3d at 239-40, 395 N.E.2d at 13-14.

■ In the instant case, however, we conclude, as a matter of law, that some risk of fatal injury is ordinarily attendant to the sport of parachute jumping and that the decedent, a former officer and pilot in the Army Air Corps, would have been aware of this risk. The training agreement signed by decedent contains a clause stating that "[t]he student knows and understands the scope, nature and extent of the risks involved in the activities contemplated by this Agreement and

voluntarily and freely chooses to incur such risks." Plaintiff has not submitted by affidavit or deposition any evidence that decedent was not aware of the risk involved. Nor does the advertising brochure issued by defendant stating that the sport of parachuting is generally safe if proper procedures are followed present any fact issue on this point. The exculpatory clause, for the reasons stated below, clearly contemplates exemption from liability, including risks of unsafe equipment and negligent instruction, notwithstanding advertising that the sport is generally safe.

■ We conclude that an accident of the type suffered by the decedent was within the scope of the exculpatory clause of the training agreement. The exemption from liability clause clearly exempted defendants from "any and all liability claims, demands or actions or causes of action whatsoever arising out of any damage, loss or injury to the Student or the Student's property while upon the premises or aircraft of the Hinckley Parachute Center, Inc. or while participating in any of the activities contemplated by the agreement, whether such loss, damage, or injury results from the *negligence* of Hinckley Parachute Center, Inc. *** or some other cause." (Emphasis added.) It is not necessary that the parties anticipate the precise circumstances which resulted in the decedent's accident, where, as here, the broad language in the exculpatory clause contemplated a wide range of risks which could be expected by a participant to occur when jumping out of an aircraft. (See *Harris v. Walker* (1988), 119 Ill. 2d 542, 549, 519 N.E.2d 917; *Schlessman v. Henson* (1980), 83 Ill. 2d 82, 86, 413 N.E.2d 1252.) The risk of unsafe equipment, negligent instruction, and death can be contemplated by a participant, and the terms of the exculpatory clause are broad enough to cover these situations.

■ We recognize that exculpatory agreements are not favored by the law and are strictly construed against the party they benefit. (*Scott & Fetzer Co. v. Montgomery Ward & Co.* (1986), 112 Ill. 2d 378, 395, 493 N.E.2d 1022.) The agreement, however, must be given a fair and reasonable interpretation based upon a consideration of all of its language and provisions. (*Calarco v. YMCA* (1986), 149 Ill. App. 3d 1037, 1043, 501 N.E.2d 268.) The training agreement here specifically mentions that Hinckley was to provide a qualified instructor, equipment, aircraft, and supervisory personnel to effectuate the student's initial parachute jump. The exemption from liability clause specifically exempts defendants from liability for injuries to decedent while participating in any activity of defendants whether those injuries result from defendants' negligence or other causes. It is clear that the fatal injury resulted from a risk within the scope of the train-

ing agreement. Therefore, we find no merit in plaintiff's contentions that a genuine issue of material fact exists and that the exculpatory clause is unclear and equivocal because the clause does not specifically contemplate or mention the risk from unsafe equipment, from negligent instruction, or of death.

■ Plaintiff also contends that the exculpatory clause in the training agreement is void and against public policy as it applies to counts III and IV, the wilful and wanton counts. We agree. Generally, agreements exculpating from the results of wilful and wanton misconduct are illegal. (*Zimmerman v. Northfield Real Estate, Inc.* (1987), 156 Ill. App. 3d 154, 164-65, 510 N.E.2d 409; *Third Swansea Properties, Inc. v. Ockerlund Construction Co.* (1976), 41 Ill. App. 3d 894, 896-97, 354 N.E.2d 148; Restatement (Second) of Contracts §195 (1981).) Further, our supreme court stated in *Davis v. Commonwealth Edison Co.* (1975), 61 Ill. 2d 494, 336 N.E.2d 881, in the context of agreements to indemnify, that "an agreement to indemnify against wilful misconduct would, as a general rule, be contrary to public policy and unenforceable though there were no statute to that effect." (61 Ill. 2d at 500-01, 336 N.E.2d at 881; see also *Schek v. Chicago Transit Authority* (1969), 42 Ill. 2d 362, 363-64, 247 N.E.2d 886.) To the extent that the assumption of risk, exemption from liability, and covenant not to sue clauses in the training agreement may arguably be construed to bar defendants from liability for wilful and wanton misconduct, they would not be effective as contrary to public policy as expressed in the above-cited Illinois decisions.

■ Defendants also make a cursory argument that plaintiff failed to provide proof that their conduct amounted to wilful and wanton misconduct and that the allegations of wilful and wanton misconduct did not "rise to the level of wilful and wanton misconduct." We reject both these brief statements. Defendants' motion for summary judgment was based solely upon the exculpatory clause of the training agreement and contained no affidavits or depositions which would refute, as an evidentiary matter, the allegations in plaintiff's amended complaint. Thus, defendants are not entitled to summary judgment on this basis either.

■ Moreover, even assuming the issue of the mere sufficiency of the allegations of counts III and IV of the amended complaint is reviewable on this appeal from an order granting summary judgment following defendants' answer, defendants have not presented us with any reasoned argument or citation of authority, beyond the mere assertion of the complaint's insufficiency, in conformance with Supreme Court Rules 341(e)(7), (f) (107 Ill. 2d Rules 341(e)(7), (f)), and, there-

fore, the issue is waived. In any event, plaintiff's numerous allegations of defendants' conscious and knowing disregard of a substantial risk support a sufficient pleading of a cause of action for wilful and wanton misconduct. (See *O'Brien v. Township High School District 214* (1980), 83 Ill. 2d 462, 469, 415 N.E.2d 1015.) These being the only arguments presented by defendants on this issue, we reverse and remand the judgment as it pertains to counts III and IV.

For the foregoing reasons, the judgment of the circuit court is affirmed as to counts I and II and is reversed and remanded as to counts III and IV.

*Affirmed in part; reversed in part and remanded.*

McLAREN and DUNN, JJ., concur.