TERRY DOWNING, Plaintiff-Appellee and Cross-Appellant, v. UNITED AUTO RACING ASSOCIATION *et al.*, Defendants-Appellants and Cross-Appellees (Robert Guess, Defendant).

First District (4th Division)   Nos. 1—89—0716, 1—89—0739 cons.

Opinion filed March 28, 1991.

French, Rogers, Kezelis & Kominiarek, P.C., of Chicago (James M. Hofert and Russell P. Veldenz, of counsel), for appellants.

Hayes & Power, of Chicago (Terrence J. Lavin, Thomas G. Siracusa, and David A. Novoselsky, of counsel), for appellee.

JUSTICE McMORROW delivered the opinion of the court:

Plaintiff Terry Downing was injured during a midget car race that was held on premises operated by defendants United Auto Racing Association (UARA) and Aaron Willis (Willis) (hereinafter collectively referred to as defendants). The plaintiff's injuries occurred when a car driven by defendant Robert Guess (Guess) overturned on the racetrack and struck plaintiff, who was standing just off the track in an area unprotected by a guardrail. A jury found that Guess was not negligent in his driving of the car, and he is not a party to this appeal. The jury determined that the actions of defendants UARA and Willis with respect to their maintenance of the track amounted to willful and wanton misconduct, and awarded plaintiff $1.5 million in damages. The jury also found that plaintiff was 59% comparatively negligent in causing his own injuries and reduced the award by this percentage, for a net damages award of $615,000.

Defendants UARA and Willis raise numerous issues on appeal. Based upon our review of the record, we conclude that: (1) the evidence of record supports the jury's determination that the actions of these defendants constituted willful and wanton misconduct; (2) a release signed by plaintiff was properly excluded from evidence; (3) the advent of comparative negligence does not abolish the distinction between ordinary negligence and willful and wanton misconduct; (4) the trial court's instruction to the jury to disregard certain testimony from the plaintiff's expert was sufficient to cure any prejudice to the defendants arising from such testimony; (5) the trial court's instruction to the jury to disregard hearsay testimony from one of plaintiff's

occurrence witnesses was adequate to prevent any prejudice to the defendants; (6) there was no error in any of the trial court's rulings with respect to testimony provided by plaintiff's experts at trial; (7) defendants are not entitled to a new trial because of allegedly improper testimony regarding the scope of plaintiff's injuries; and (8) there were no cumulative errors that entitle defendants to a new trial.

Plaintiff also cross-appeals from the judgment entered upon the jury's verdict, claiming that his ordinary negligence could not offset defendants' liability for willful and wanton acts. We conclude that, in light of the adoption of comparative fault, a jury may consider a plaintiff's ordinary negligence to reduce the amount of damages assessed for a defendant's willful and wanton acts.

In accordance with these determinations, we affirm.

Plaintiff was injured on August 12, 1978, during a midget car race at Joliet Memorial Stadium. Defendant Willis leased the track to promote, organize and supervise such races. Under the agreement, defendant Willis was to provide a safe, adequate, and properly prepared track for the races, including personnel to supervise activities near the track and in the pit area. Defendant UARA agreed to sanction races held by defendant Willis at the stadium.

At the time of his injury, plaintiff was a member of a pit crew for Richard Pole (Pole), a midget car driver. Plaintiff helped others in the crew to prepare the car and push it onto the track. As plaintiff waited on the track for the car to be pushed into a warm-up race, he noticed that the car being driven by Guess bicycled in the turns nearer to plaintiff. "Bicycling" occurs when the car's inner wheels lose contact with the track surface.

According to plaintiff's trial testimony, Guess' car bicycled approximately two feet off the asphalt in these turns. After Guess' car passed through the turns, plaintiff and other members of the crew pushed Pole's car onto the track to participate in the warm-up race. Thereafter, plaintiff began to walk off the track toward the pit area. He was accompanied by George Boban (Boban), who was also a pit crew member for Pole. Both plaintiff and Boban noted that Guess' car again bicycled a few feet in the air when the car made the two turns at the far end of the track. Plaintiff testified that he mentioned to Boban, and to David Valentino (Valentino), a pit crew member for another driver who was nearby, that Guess' car should be blackflagged off the track. "Blackflag" occurs when the racing steward waves a black flag to a driver to signal to the driver that his car should leave

the track. Valentino also testified at trial that he noticed that Guess' car bicycled when making turns around the track.

Boban and Valentino testified that they were standing with plaintiff in the grassy area near the track when they noticed Guess' car bicycling in turns on the track. Also, Boban and Valentino testified that Guess' car bicycled both during warm-up laps, where the cars are running at a reduced speed, and during hot laps, where the cars are making trial runs at full speed. However, plaintiff testified that he believed Guess' car was operating a warm-up lap when he first noticed the bicycling, but that he did not know whether Guess was operating during a hot lap when Guess' car repeated its bicycling around the track.

It was established at trial that a racing steward controlled whether the cars were racing a warm-up lap or a hot lap. To indicate a warm-up lap, the steward would wave a yellow flag. To indicate a hot lap, the steward would wave a green flag. In addition, there was a light signal at the far end of the track, away from the pit area, that would show a yellow or green light depending upon the signals given by the racing steward.

During the time that plaintiff, Boban, and Valentino noticed Guess' car bicycling at the far end of the track, they were located in a grassy area off the track between the pit and the straightaway. A guardrail separated the track from the pit area at the turns at this end of the track, and there was a fence along the track straightaway. Boban, Valentino, and plaintiff all testified that they were aware that it was dangerous to remain in this area during a hot lap.

Plaintiff testified at trial that because he believed that the bicycling of Guess' car created a hazardous condition on the track, he concluded that Guess' car should be removed from the race. In an effort to find a race official to blackflag Guess' car, plaintiff began to walk away from Boban and Valentino. He walked in the grassy strip along the track, away from the guardrail, in the direction of the fence along the straightaway. Plaintiff did not watch Guess' car as it continued on the track.

Boban and Valentino testified that as Guess' car reached the turns nearer to the pit area, the car again bicycled. It then flipped over and began skidding toward the area where plaintiff, Boban, and Valentino were located. Although Boban and Valentino avoided injury, plaintiff was struck by the car and pinned against the fence next to the track straightaway. He sustained injuries requiring extensive surgery and lengthy post-operative care.

Plaintiff contended that defendants UARA and Willis were guilty of willful and wanton conduct because they (1) failed to extend the guardrail near the pit area and (2) failed to provide a pit steward to ensure that persons did not remain in the exposed area near the pit. In addition, plaintiff claimed that defendant UARA was guilty of willful and wanton misconduct because it failed to blackflag Guess' car off the track once it began to bicycle.

To support his contentions, plaintiff produced evidence at trial to show that defendants were aware that the area where plaintiff had been located was dangerous because it exposed persons standing there to the risk of being hit by cars driven on the track. Plaintiff's expert at trial, Dr. John Fitch, stated that the guardrail along the pit area should have been extended toward the straightaway to minimize this hazard. Dr. Fitch also testified that, as an alternative to a guardrail, defendants should have placed a steward in the area where plaintiff was located at the time he was injured, who would be responsible for preventing persons from remaining in that vicinity. Dr. Fitch also stated that the defendant UARA should have blackflagged Guess' car off the track before it bicycled, lost control, and spun into plaintiff. Dr. Fitch testified that either an extended guardrail, the presence of a steward to warn plaintiff off the area unprotected by a guardrail, or the removal of Guess' car probably would have prevented plaintiff's injuries.

Defendants presented evidence to show that none of the alternatives suggested by plaintiff was reasonably necessary and that none would have prevented plaintiff's injuries. Testimony from experts detailed these points. Defendants also presented testimony to establish that they had warned pit crew members, including plaintiff, not to stand in the area where the plaintiff's injuries occurred.

Based upon this evidence, the jury returned a verdict against defendants UARA and Willis. It awarded plaintiff $1.5 million in damages, reduced to $615,000 for plaintiff's comparative fault, which the jury assessed at 59%. The trial court entered judgment in conformity with this verdict. Defendants UARA and Willis appeal, and plaintiff cross-appeals.

I

■ Defendants argue that the jury's finding of willful and wanton misconduct was not supported by the evidence of record. They contend that the trial court should have granted their motion for judgment notwithstanding the verdict or in the alternative for a new trial. A motion for judgment notwithstanding the verdict should be granted

when all the evidence, viewed in the light most favorable to the nonmoving party, so overwhelmingly favors the movant that no contrary verdict could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504; *Bausback v. K mart Corp.* (1990), 194 Ill. App. 3d 325, 550 N.E.2d 1269.) A motion for a new trial is properly allowed when the jury's verdict is against the manifest weight of the evidence. *Marin v. American Meat Packing Co.* (1990), 204 Ill. App. 3d 302, 562 N.E.2d 282.

■■ Willful and wanton acts are those which, under the circumstances of the particular case, exhibit reckless disregard for the safety of others, including the failure to exercise ordinary care to prevent an impending danger. (*Schneiderman v. Interstate Transit Lines, Inc.* (1946), 394 Ill. 569, 583, 69 N.E.2d 293; see also *Adkins v. Sarah Bush Lincoln Health Center* (1989), 129 Ill. 2d 497, 518, 544 N.E.2d 733; *O'Brien v. Township High School District 214* (1980), 83 Ill. 2d 462, 469, 415 N.E.2d 1015; *Lynch v. Board of Education of Collinsville Community Unit District No. 10* (1980), 82 Ill. 2d 415, 412 N.E.2d 447.) To establish that a defendant was guilty of willful and wanton conduct, plaintiff must show that the defendant had actual or constructive knowledge that his conduct posed a high probability of serious physical harm to others. (*Albers v. Community Consolidated No. 204 School* (1987), 155 Ill. App. 3d 1083, 1085, 508 N.E.2d 1252.) The evidence must disclose that defendant was reckless, not merely careless, in his disregard of the danger created by the circumstances. (*Lynch*, 82 Ill. 2d 415, 412 N.E.2d 447.) Whether a defendant's acts amounted to willful and wanton conduct is a question to be resolved by the finder of fact, based upon the particular circumstances of each individual case. *Lynch*, 82 Ill. 2d 415, 412 N.E.2d 447; *Soucie v. Drago Amusements Co.* (1986), 145 Ill. App. 3d 348, 495 N.E.2d 997; *Barth v. Board of Education* (1986), 141 Ill. App. 3d 266, 490 N.E.2d 77.

■■ A review of the record reveals sufficient basis to justify the jury's verdict that defendants UARA and Willis were willful and wanton. Plaintiff produced evidence that showed defendants were aware that the exposed area near the pit presented a substantial risk of serious injury to persons who stood there, and that defendants knew pit crew members were often located in the vicinity during warm-up and hot laps. The testimony of plaintiff's expert, Dr. John Fitch, established that defendants should have either extended the guardrail near the pit area, or secured the presence of a pit steward who would be responsible for preventing pit crew members from standing in the area. Dr. Fitch also testified that defendant UARA, in addition to

these alternatives, should have had Guess' car blackflagged off the track before it bicycled, lost control, and spun into plaintiff. Dr. Fitch testified that in his opinion, the defendants' failure to extend the guardrail, or require the presence of a pit steward, was an utter disregard for the safety of pit crew members. The plaintiff's expert gave similar testimony with respect to defendant UARA's failure to black-flag Guess' car. We cannot say, as a matter of law, that this evidence was insufficient to prove that defendants' omissions constituted willful and wanton conduct. It is not the province of this court, on appeal from a jury verdict, to reweigh the evidence of record or to question the validity of the opinions stated by the plaintiff's expert. See, *e.g., Doser v. Savage Manufacturing & Sales, Inc.* (1990), 142 Ill. 2d 176.

Defendants do not dispute the sufficiency of the evidence with respect to their knowledge that the exposed area between the guardrail and the fence was hazardous to pit crew members who stood in that location. Instead, defendants argue that the jury could not find them liable for willful and wanton misconduct, because the defendants warned pit crew members not to stand in the exposed area during hot laps, and because they provided light signals at the far end of the track, visible to pit crew members, to indicate whether the cars were running a warm-up lap or a hot lap. Defendants also note that their opportunity to have plaintiff removed from the exposed area prior to his injury lasted only a few seconds and was too short a period of time in which to prevent plaintiff from remaining in the exposed area. Defendants further observe that plaintiff was fully aware of the hazards associated with his staying in the exposed area near the pit. On these bases, the defendants urge that the jury could not find defendants willful and wanton on any of the grounds alleged by the plaintiff.

We are unable to find defendants' arguments sufficient ground to disturb the jury's verdict. As defendants concede, defendants were aware that the exposed area remained hazardous to pit crew members and required a warning to pit crew members to avoid the area. Defendants also acknowledge that because of the hazardous nature of the exposed area near the pit, light signals at the far end of the track were intended to show whether the cars were running warm-up laps or hot laps. Plaintiff's expert testified that, in his opinion, the defendants' warnings and light signals were insufficient to adequately protect plaintiff, in view of the high degree of risk of serious bodily harm created by the exposed area near the pit. Plaintiff's expert stated that because of the likelihood of serious bodily injury associated with the exposed vicinity near the pit, defendants should have either extended the guardrail near the pit area or provided a pit steward to prevent

pit crew members from remaining in the exposed area near the pit. Plaintiff's expert testified that the probability of serious bodily injury also required that defendant UARA should have blackflagged Guess' car before it bicycled, lost control, and spun into plaintiff. It was the opinion of the plaintiff's expert that each of these alternatives probably would have been sufficient to avoid plaintiff's injuries, in spite of the short period of time he remained in the exposed area prior to his being struck by Guess' car. The defendants' knowledge that a short time was required for a midget car to complete a lap on the track, and that injury could occur within seconds, was further indication that these additional alternatives should have been pursued by the defendants in order to lessen the high degree of serious bodily injury created by the exposed area near the pit. It was the jury's responsibility to assess the weight to be given to the testimony of plaintiff's expert, and to determine whether defendants' warnings were sufficient under the circumstances of this case. Upon review, we are not empowered to usurp this jury function. (See *Doser v. Savage Manufacturing & Sales, Inc.* (1990), 142 Ill. 2d 176.) In addition, the plaintiff's understanding of the scope of harm associated with remaining in the exposed area near the pit was considered by the jury with respect to plaintiff's comparative fault, and we cannot say upon review that the jury's apportionment of comparative fault between the parties was erroneous as a matter of law.

Defendants essentially argue that, because the defendants undertook some acts to provide for the safety of pit crew members in the exposed area by warning them about the hazards and by providing light signals to alert them to whether the cars were running a warm-up lap or a hot lap, defendants' failure to undertake additional steps could not be deemed willful and wanton. Defendants note that there are Illinois cases in which the defendants' provision of some safety measures led the courts to conclude that the defendants were not liable for willful and wanton misconduct for their failure to provide other or additional safety measures. See *Lynch v. Board of Education of Collinsville Community Unit District No. 10* (1980), 82 Ill. 2d 415, 412 N.E.2d 447; *Holsapple v. Casey Community Unit School District C-1* (1987), 157 Ill. App. 3d 391, 510 N.E.2d 499; *Turner v. Commonwealth Edison Co.* (1976), 35 Ill. App. 3d 331, 341 N.E.2d 488.

However, in none of these cases did the plaintiff's expert testify that the failure to provide an additional safety measure was, in the expert's opinion, an utter disregard for the plaintiff's safety. In the instant cause, the plaintiff's expert identified two alternatives, *i.e.*, the extension of the guardrail near the pit or the provision of a pit stew-

ard near the exposed area of the track, that defendants could have undertaken in order to protect plaintiff from the dangers created by the open area between the pit and the straightaway. Plaintiff's expert identified a third alternative that should have been performed by defendant UARA, *i.e.*, to have Guess' car blackflagged off the track before it bicycled, lost control, and spun into plaintiff. Plaintiff's expert further testified that the failure to undertake any of these steps was, in his opinion, an utter disregard for the plaintiff's safety.

This critical distinction renders factually inapposite the cases cited by defendants in the instant cause. It was the jury's task to determine whether, under the facts of this case, the defendants' failure to provide additional safety measures amounted to willful and wanton misconduct. We cannot say, as a matter of law, that the defendants were not willful and wanton merely because they undertook the safety measures upon which the defendants rely in this appeal. Defendants' position asks this court to ignore the testimony of plaintiff's expert to the effect that the measures undertaken by defendants were substantially inadequate, that the provision of one or more of the safety measures enumerated by the plaintiff's expert probably would have prevented plaintiff's injuries, and that defendants' failure to undertake one or more of these safety measures evidenced an utter disregard for the plaintiff's safety. Our scope of review does not grant us such authority. See *Doser v. Savage Manufacturing and Sales, Inc.* (1990), 142 Ill. 2d 176.

■ Defendants also claim that the jury's verdict was erroneous, because plaintiff produced no evidence to show that defendants had actual or constructive knowledge that the existing safety features were unreasonably dangerous. Specifically, defendants assert that plaintiff produced no evidence of any prior accidents or complaints, or industry custom or practice, regarding the existing safety measures at the track. However, the cases cited by defendants do not hold that proof of industry custom or practice, or proof of prior incidents or complaints, is a prerequisite in all instances to support a finding of willful and wanton conduct (see *Holsapple v. Casey Community Unit School District C-1* (1987), 157 Ill. App. 3d 391, 510 N.E.2d 499; *Keller v. Mols* (1987), 156 Ill. App. 3d 235, 509 N.E.2d 584; *Del Muro v. Commonwealth Edison Co.* (1984), 124 Ill. App. 3d 473, 464 N.E.2d 772; *Mathis v. Burlington Northern, Inc.* (1978), 67 Ill. App. 3d 1009, 385 N.E.2d 780), and a jury's finding of willful and wanton acts has been upheld in the absence of evidence that defendants had received prior complaints or notice of accidents regarding the dangerous condition created by the defendants' conduct. (See, *e.g., Soucie v. Drago*

*Amusements Co.* (1986), 145 Ill. App. 3d 348, 495 N.E.2d 997; *Barth v. Board of Education* (1986), 141 Ill. App. 3d 266, 490 N.E.2d 77.) It was the province of the fact finder to consider the absence of prior complaint, prior accidents, and the absence of industry standard or custom, in reaching its determination of whether defendants' actions constituted willful and wanton conduct. Upon review, we cannot conclude that defendants' argument in this regard is sufficient ground to disturb the jury's verdict against them.

■ Defendants also contend that the jury's determination was not supported by the record because plaintiff's expert, Dr. Fitch, testified on cross-examination that he did not know, with certainty, whether an extended guardrail would have prevented the accident. Although an expert's opinion may not be based on speculation or conjecture, "an expert opinion couched in terms of probabilities *** is not improper or inadmissible. [Citation.]" (*Rodrian v. Seiber* (1990), 194 Ill. App. 3d 504, 507, 551 N.E.2d 772.) In the case at bar, the record reflects that Dr. Fitch stated on direct examination that an extended guardrail probably would have prevented plaintiff's injuries. Consequently, the testimony of Dr. Fitch was sufficient to support the jury's verdict against defendants, on the ground that defendants' failure to provide an extended guardrail proximately caused the plaintiff's injuries.

In light of these considerations, we conclude that the trial court properly denied defendants' motion for judgment notwithstanding the verdict or a new trial.

## II

Defendants urge that they should receive a new trial because the trial court committed reversible error when it denied defendants' motion to pursue their affirmative defense that defendants were not liable because plaintiff had executed a release relieving defendants of liability for injuries sustained at the track. We find no error in the trial court's ruling.

■ Generally, a release does not bar plaintiff's maintenance of an action alleging willful and wanton misconduct by the defendants. This rule is based on the determination that, as a matter of public policy, a plaintiff cannot exculpate or indemnify a defendant for the defendant's willful and wanton acts. (See *Falkner v. Hinckley Parachute Center, Inc.* (1989), 178 Ill. App. 3d 597, 533 N.E.2d 941; *Zimmerman v. Northfield Real Estate, Inc.* (1986), 156 Ill. App. 3d 154, 510 N.E.2d 409; *Third Swansea Properties, Inc. v. Ockerlund Construction Co.* (1976), 41 Ill. App. 3d 894, 354 N.E.2d 148; see also *Davis v.*

*Commonwealth Edison Co.* (1975), 61 Ill. 2d 494, 336 N.E.2d 881; *Schek v. Chicago Transit Authority* (1969), 42 Ill. 2d 362, 247 N.E.2d 886.) In light of this precedent, the trial court properly denied defendants' request to pursue their affirmative defense that plaintiff's execution of a release precluded plaintiff's recovery from defendants for willful and wanton misconduct.

■■ Defendants argue that the trial court's ruling was in error, because Illinois courts have recognized the validity of a release in cases involving injuries sustained as a result of a race car accident. However, the cases cited by defendants are inapposite, because they pertained to suits alleging negligence, rather than those alleging willful and wanton acts. (See *Schlessman v. Henson* (1980), 83 Ill. 2d 82, 413 N.E.2d 1252; *Morrow v. Auto Championship Racing Association, Inc.* (1972), 8 Ill. App. 3d 682, 291 N.E.2d 30; see also *Provence v. Doolin* (1980), 91 Ill. App. 3d 271, 414 N.E.2d 786.) We decline defendants' invitation to create an exception for exculpatory clauses involving racetrack accidents on the theory that Illinois law has a deleterious, chilling effect on the sport of car racing.

Defendants also argue that they should have been permitted to cross-examine plaintiff regarding the contents of the release in order to show that plaintiff had assumed the risk of injuries at the track. Initially, defendants contend that the release was relevant to the question of plaintiff's implied primary assumption of the risk.

■ ■ Under implied primary assumption of the risk, the plaintiff's conduct is deemed an implicit assumption of all of the risk arising from a certain activity. As a result, under implied primary assumption of the risk, a plaintiff may relieve a defendant of any duty to the plaintiff to be free from ordinary negligence. See *Goad v. Evans* (1989), 191 Ill. App. 3d 283, 547 N.E.2d 690; *Clark v. Rogers* (1985), 137 Ill. App. 3d 591, 484 N.E.2d 867; *Duffy v. Midlothian Country Club* (1985), 135 Ill. App. 3d 429, 481 N.E.2d 1037.

Implied primary assumption of the risk is similar to an express assumption of the risk. Under express assumption of the risk, a plaintiff has explicitly, usually in writing, agreed to relieve the defendant of liability for any injuries arising from an activity. However, an express assumption of the risk does not preclude a plaintiff's suit for willful and wanton misconduct, because public policy dictates that a plaintiff cannot absolve a defendant of liability for the defendant's willful and wanton acts. (See, *e.g., Falkner v. Hinckley Parachute Center, Inc.* (1989), 178 Ill. App. 3d 597, 533 N.E.2d 941.) In light of this public policy, we conclude that an implied primary assumption of the risk, similar to an express assumption of the risk, should not bar a plain-

tiff's action for injuries due to willful and wanton acts of a defendant. (*Falkner*, 178 Ill. App. 3d at 604.) Accordingly, the release was not admissible to show that plaintiff's actions amounted to an implicit, primary assumption of the risks of injury arising from his participation in the midget car race.

■■■ Defendants also argue that they should have been permitted to offer the release to prove plaintiff's implied secondary assumption of the risk. Implied secondary assumption of the risk occurs when a plaintiff, by his conduct, has assumed certain consequences from his participation in an activity. Implied secondary assumption of the risk is a damage-reducing factor considered as an element of comparative fault. See *Simpson v. General Motors Corp.* (1985), 108 Ill. 2d 146, 483 N.E.2d 1; *Corlett v. Caserta* (1990), 204 Ill. App. 3d 403, 562 N.E.2d 257; *Wheeler v. Roselawn Memory Gardens* (1989), 188 Ill. App. 3d 193, 543 N.E.2d 1328; *Duffy v. Midlothian Country Club* (1985), 135 Ill. App. 3d 429, 481 N.E.2d 1037.

■■■ Defendants fully cross-examined plaintiff regarding his understanding of the hazards associated with his remaining in the exposed area of the track between the pit area and the straightaway, and defendants acknowledge that the area was hazardous to anyone who remained there. Defendants do not demonstrate in what respect plaintiff's trial testimony contradicted his written acknowledgment, in the release, that the exposed area near the pit was dangerous. As a result, we are unable to conclude that defendants' lack of cross-examination of plaintiff regarding the provision in the release should warrant a new trial.

In addition, the record shows that prior to trial, the court expressly reserved ruling on whether defendants should be permitted to cross-examine plaintiff regarding a provision in the release wherein plaintiff recognized the hazards associated with the exposed area near the pit, in order to show that plaintiff's implied secondary assumption of the risk should act as an offset under comparative fault. However, during their cross-examination of plaintiff, defendants did not renew their request to question plaintiff regarding this provision in the release. Defendants' failure to renew their request constituted a waiver of this argument and cannot be asserted on appeal. See, *e.g., Morris v. Illinois State Board of Education* (1990), 198 Ill. App. 3d 51, 555 N.E.2d 725.

### III

Defendants also assert that they should have been permitted to pursue their affirmative defense that plaintiff was precluded from any

recovery because of his execution of the release, because the rule regarding unenforceability of a release with respect to willful and wanton conduct is no longer supported by Illinois precedent. Defendants contend that the advent of comparative negligence has abolished the distinction between ordinary negligence and willful and wanton acts, and that liability for willful and wanton misconduct remains viable only in the context of punitive damages.

To support this argument, defendants note that prior to *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886, Illinois law held that a plaintiff's contributory negligence barred any recovery from the defendant who had committed acts of ordinary negligence. To circumvent the harsh effects of this rule, it was held that a plaintiff's contributory negligence did not prevent recovery for the defendant's willful and wanton conduct. (See *Alvis*, 85 Ill. 2d at 10.) Defendants also note that Illinois courts have recognized that the rule permitting recovery when the plaintiff's acts were negligent and the defendant's conduct willful and wanton was "cumbersome and difficult to apply" (*Alvis*, 85 Ill. 2d at 10), and not a matter with which the average juror was readily familiar. (*Lynch*, 82 Ill. 2d at 431-32.) In addition, defendants observe that there is a "thin line" between simple negligence and willful and wanton acts, citing *Mattyasovszky v. West Towns Bus Co.* (1975), 61 Ill. 2d 31, 35, 330 N.E.2d 509, *State Farm Mutual Automobile Insurance Co. v. Mendenhall* (1987), 164 Ill. App. 3d 58, 61, 517 N.E.2d 341, *Barth v. Board of Education* (1986), 141 Ill. App. 3d 266, 276, 490 N.E.2d 77, and *Spivack v. Hara* (1966), 69 Ill. App. 2d 22, 26, 216 N.E.2d 173.

██ We cannot accept defendants' argument that the adoption of comparative fault dictates the conclusion that a plaintiff's execution of a release relieves the defendant of liability for the defendant's willful and wanton conduct. (See *Montag v. Board of Education, School District No. 40* (1983), 112 Ill. App. 3d 1039, 1044-45, 446 N.E.2d 299.) The underlying justification for the adoption of comparative fault is to equitably apportion damages among the parties according to their respective fault in causing the plaintiff's injuries. (See *Alvis*, 85 Ill. 2d at 16.) However, abolition of the rule that a plaintiff's exculpatory agreement cannot relieve the defendant of liability for willful and wanton conduct would not serve to apportion damages according to the parties' relative fault. Rather, it would completely bar a plaintiff's recovery of any damages from the defendant notwithstanding defendant's willful and wanton conduct. Although there may be a "thin line" between simple negligence and willful and wanton acts under the facts of certain cases, and although the distinction between ordinary

negligence and willful and wanton misconduct may not be easily understood by jurors, "the[se] necessary subtle calculations [are] no more difficult or sophisticated for jury determination than others in a jury's purview." *Alvis*, 85 Ill. 2d at 17.

In light of these considerations, we decline to hold that the adoption of comparative fault has abolished the distinction between ordinary negligence and willful and wanton conduct in the context of enforcement of an exculpatory clause between the parties. Whether a plaintiff's comparative fault may offset the amount of damages recovered from the defendants for willful and wanton acts is considered below with respect to plaintiff's cross-appeal.

## IV

Defendants argue that the plaintiff intentionally violated the trial court's orders excluding evidence regarding post-accident changes to the racetrack undertaken by defendants. Specifically, defendants claim that plaintiff impermissibly elicited testimony from Dr. Fitch to the effect that there should have been an additional guardrail along the track straightaway, following the turn on the track where the exposed area near the pit was located. The trial court held this testimony inadmissible and instructed the jury to disregard it. However, the defendants argue that they were substantially prejudiced by the stricken testimony, that the trial court's instruction to the jury did not cure this prejudice, and that, therefore, they should receive a new trial. We disagree.

As noted more fully above with respect to defendants' motion for judgment notwithstanding the verdict or a new trial, the record contains sufficient evidence to sustain the jury's verdict that defendants' failure to extend a guardrail or provide a pit steward amounted to willful and wanton misconduct. The record also supports the jury's verdict that defendant UARA was willful and wanton with regard to its failure to have Guess' car blackflagged off the track before it bicycled, lost control, and spun into plaintiff. In light of this evidence of record, the trial court's curative instruction was sufficient to dispel any prejudice to the defendants resulting from this testimony. In addition, because of the adequate evidence to support the jury's determination, we cannot say that defendants should be entitled to a new trial on the ground that plaintiff's actions were purposely designed to avoid an earlier trial court *in limine* order. See *Dugan v. Weber* (1988), 175 Ill. App. 3d 1088, 530 N.E.2d 1007.

## V

■■ Defendants assert that plaintiff improperly elicited hearsay testimony from Valentino to the effect that shortly before the accident, Valentino heard Boban say that Guess' car should be black-flagged off the track. The trial court struck Valentino's testimony for reasons unchallenged in this appeal and instructed the jury to disregard this evidence.

Based upon our review of the record, we conclude that the trial court's instructions to the jury were adequate to cure any prejudice to the defendants on this point. (See, *e.g., Dugan v. Weber* (1988), 175 Ill. App. 3d 1088, 530 N.E.2d 1007.) Plaintiff testified and was cross-examined regarding his own statements at the time to the effect that Guess' car should be removed or blackflagged from the track. Valentino and Boban were also fully questioned regarding their perceptions of the extent to which Guess' car bicycled while on the track, and whether they considered it a hazard on the track. Construing the record as a whole, Valentino's stricken testimony was an isolated, peripheral remark, and the trial court's curative instruction to the jury sufficient to forestall any prejudice to the defendants.

## VI and VII

■■ Defendants also challenge the trial court's admission into evidence of Dr. Fitch's expert opinion regarding the need for an extension of the existing guardrail. Defendants renew arguments they made with respect to the sufficiency of the evidence to support the jury's verdict, to wit: (1) plaintiff produced no evidence that the existing guardrail violated industry standards or practices; and (2) the plaintiff's expert could not testify with absolute certainty that an extended guardrail would have prevented plaintiff's injuries. In addition, defendants argue that the trial court's cautionary instruction to the jury, to disregard a statement made by Dr. Fitch regarding the basis of defendant Willis' liability for the failure to extend the guardrail, was insufficient to cure the prejudice arising from this stricken testimony.

As stated earlier with respect to whether defendants are entitled to judgment notwithstanding the verdict or a new trial, the record contains ample evidence to support the jury's conclusion that defendants were liable for willful and wanton misconduct because of their failure to either extend the guardrial or to provide a pit steward near the exposed area of the track. The record also supports the jury's determination that defendant UARA was liable for willful and wanton

misconduct because of its failure to have Guess' car blackflagged off the track before the car bicycled, lost control, and spun into plaintiff. The plaintiff's evidence also showed that defendant Willis was responsible for maintenance of the track in order to ensure the safety of pit crew members. Consequently, even if the trial court committed error in its rulings with regard to the testimony of Dr. Fitch pertaining to the need for an extended guardrail and defendant Willis' liability therefor, we are unable to conclude that such error would warrant a new trial.

## VIII

Defendants also attack the trial court's ruling that the plaintiff's trial expert, Dr. John Fitch, was qualified to render an expert opinion at trial. The record supports the trial court's determination that Dr. Fitch was qualified to render an expert opinion.

■■ A person is qualified as an expert when he has peculiar knowledge, training, or experience that is relevant to an issue at trial. (See, e.g., *Schaffner v. Chicago & North Western Transportation Co.* (1989), 129 Ill. 2d 1, 541 N.E.2d 643.) According to his trial testimony, Dr. Fitch was a competitive professional race car driver from 1949 until 1966, and remained actively involved in the industry after his retirement. He has served as a safety consultant on motor vehicle safety standards for a wide variety of institutions, has worked on publications involving vehicle deceleration and crash barriers, and holds a patent for a certain type of vehicle safety barrier system commonly used on all public highways across the country. Dr. Fitch has also consulted on racetrack design and safety at tracks on several occasions, including tracks that could be used for midget car races. Based upon this evidence, the trial court properly exercised its discretion when it determined that Dr. Fitch was qualified to render an expert opinion with respect to the safety of the racetrack at issue in the instant cause.

The case of *Galindo v. Riddell, Inc.* (1982), 107 Ill. App. 3d 139, 437 N.E.2d 376, is factually inapposite to the case at bar. In *Galindo*, the witness offered as the defendant's expert had been a professional football player and had a degree in mechanical engineering. Because the witness had never used his expertise to determine the causes of a football injury, the court determined that he was not qualified to render an expert opinion on the cause of the plaintiff's injuries during a football game. In the case before us, although the plaintiff's expert did not have experience as a midget car race driver, he nevertheless was experienced in competitive racecar driving and in the design of

racetracks with a view to safety measures necessary to protect persons in the event of a racecar accident on the track. The expert's limited experience with midget cars affected the weight to be given to his testimony, but did not bar the admissibility of his testimony. See *Buford v. Chicago Housing Authority* (1985), 131 Ill. App. 3d 235, 244, 476 N.E.2d 427.

## IX

■■■ Defendants assert that they should receive a new trial because plaintiff's treating physician, Dr. Campbell, should not have been permitted to testify that plaintiff's condition may deteriorate to such a degree that amputation of his lower leg and foot might be required. It has been held that, when the defendant does not challenge on appeal the amount of damages assessed against the defendant, the trial court's erroneous admission of evidence regarding the extent of a plaintiff's injuries is insufficient ground to reverse for a new trial. (See, *e.g., Illinois Piping Co. v. Industrial Commission* (1987), 156 Ill. App. 3d 955, 509 N.E.2d 1107.) Defendants UARA and Willis do not contest the amount of damages awarded to the plaintiff in the instant cause. Consequently, even assuming *arguendo* that Dr. Campbell's challenged testimony should have been excluded, we cannot say that its introduction was so prejudicial to defendants that they should be granted a new trial.

## X

In light of these considerations, we also find that there were no cumulative errors that deprived defendants of a fair trial. Our review of the record reveals sufficient evidence to support the jury's verdict against the defendants, and that none of the alleged errors affected the jury's determination. We conclude that defendants' arguments are insufficient to disturb the trial court's entry of judgment against them.

## XI

In a cross-appeal, plaintiff challenges the apportionment of damages between the parties. Specifically, plaintiff argues that his ordinary negligence could not be considered by the jury as an offset in the assessment of compensatory damages for the defendants' willful and wanton misconduct.

Illinois precedent is in conflict with respect to this question. In *State Farm Mutual Automobile Insurance Co. v. Mendenhall* (1987), 164 Ill. App. 3d 58, 517 N.E.2d 341, the court determined that a

plaintiff's ordinary negligence could be considered by the jury to reduce the compensatory damages assessed for the defendant's willful and wanton conduct. The court's ruling in *Mendenhall* was expressly reaffirmed in *Yates v. Brock* (1989), 191 Ill. App. 3d 358, 547 N.E.2d 1031, *appeal denied* (1990), 131 Ill. 2d 568. (See also *Deal v. Byford* (1989), 127 Ill. 2d 192, 537 N.E.2d 267 (question not addressed because not preserved for review).) Relying on *Mendenhall*, the trial court judge in the instant cause permitted the jury to consider the plaintiff's ordinary negligence in reducing the damages assessed for the defendants' willful and wanton conduct.

However, the decisions of *Mendenhall* and *Yates* were subsequently rejected in *Burke v. 12 Rothschild's Liquor Mart, Inc.* (1991), 209 Ill. App. 3d 192, wherein the court determined that the plaintiff's ordinary negligence could not reduce the damages recovered for the defendant's willful and wanton acts. Cases from other jurisdictions also represent a split of authority on this question. See, *e.g., Amoco Pipeline Co. v. Montgomery* (W.D. Olka. 1980), 487 F. Supp. 1268 (applying Oklahoma law); *Vining v. City of Detroit* (1987), 162 Mich. App. 720, 413 N.W.2d 486; *Krivijanski v. Union R.R. Co.* (1986), 357 Pa. Super. 196, 515 A.2d 933; *Davies v. Butler* (Nev. 1979), 602 P.2d 605; see generally Annot., *Application of Comparative Negligence in Action Based on Gross Negligence, Recklessness, or the Like*, 10 A.L.R.4th 946 (1981).

The decisions of *Mendenhall* and *Burke* founded much of their analysis on the Illinois Supreme Court's adoption of comparative fault in *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886. The courts noted that prior to *Alvis*, Illinois adhered to the contributory negligence rule. Under this rule, a plaintiff was prevented from any recovery for compensatory damages from a negligent defendant, if the plaintiff's ordinary negligence also contributed to his injuries. However, the plaintiff was permitted full recovery of compensatory damages, irrespective of the plaintiff's ordinary negligence, if the defendant's acts amounted to willful and wanton conduct. (See *Alvis*, 85 Ill. 2d at 10.) The advent of comparative fault in *Alvis* eliminated the harsh effect of the contributory negligence rule upon a negligent plaintiff's recovery of compensatory damages from a negligent defendant. Under *Alvis*, compensatory damages are assessed according to an apportionment of the parties' respective negligence in proximately causing the plaintiff's injuries. (See *Alvis*, 85 Ill. 2d at 16.) The supreme court in *Alvis* did not resolve the collateral issue of whether the jury should be permitted to apportion damages between

the negligent plaintiff and the willful and wanton defendant. *Alvis*, 85 Ill. 2d at 28.

The courts in *Mendenhall* and *Burke* adopted divergent views with respect to the significance that should be accorded to the equitable principles underlying comparative fault. The *Mendenhall* court concluded that equitable principles of comparative fault outweigh the social opprobrium associated with willful and wanton acts, because of the "thin line" between ordinary negligence and willful and wanton conduct. (164 Ill. App. 3d at 61.) The *Burke* court determined that the social stigma attached to willful and wanton conduct overrides the equitable principles of comparative fault, because of the significant difference in the degree of culpability associated with ordinary negligence as compared to willful and wanton acts. (*Burke*, 209 Ill. App. 3d at 204; see also *Wassell v. Adams* (7th Cir. 1989), 865 F.2d 849 (noting "split" in Illinois cases regarding proper characterization of "willful and wanton"); *Davis v. United States* (7th Cir. 1983), 716 F.2d 418 (noting that Illinois had apparently adopted a rule equating "willful and wanton" conduct with "gross negligence").) Thus, the divergent views expressed in *Mendenhall* and *Burke* reflect the hybrid nature of willful and wanton conduct, which under the facts of one case may be only degrees more than ordinary negligence, while under the facts of another case may be only degrees less than intentional wrongdoing. See *Mattyasovszky v. West Towns Bus Co.* (1975), 61 Ill. 2d 31, 35, 330 N.E.2d 509.

The courts in *Mendenhall* and *Burke* also differed with respect to the significance they attached to Illinois Supreme Court decisions that have limited, or refused to apply, comparative fault principles in certain situations. In Structural Work Act (Ill. Rev. Stat. 1989, ch. 48, par. 60 *et seq.*) cases, a plaintiff's comparative fault is not considered as an offset or a bar to the defendant's damages, in order to preserve the social interest in providing safe working conditions in those instances governed by the Act. (See *Hollis v. R. Latoria Construction, Inc.* (1985), 108 Ill. 2d 401, 485 N.E.2d 4.) In strict product liability cases, a plaintiff's ordinary negligence does not reduce his compensatory damages, although the plaintiff's misuse of the product, or his assumption of the risk from using the product, may be considered by the jury in reducing the amount of damages recovered from the defendant. (See *Coney v. J.L.G. Industries, Inc.* (1983), 97 Ill. 2d 104, 454 N.E.2d 197.) The *Mendenhall* court concluded that these supreme court decisions did not indicate that comparative fault should be inapplicable when damages are assessed against the willful and wanton defendant. (*Mendenhall*, 164 Ill. App. 3d at 61.) However, the *Burke*

court determined that these supreme court decisions demonstrated that comparative fault principles should be limited to those instances where the defendant was found liable for negligent, but not willful and wanton, conduct. *Burke*, 209 Ill. App. 3d at 205-06.

▮▮▮ Under the facts of the instant cause, we conclude that the trial court properly permitted the jury to consider the plaintiff's comparative fault, based upon principles of ordinary negligence, as an offset to the compensatory damages awarded for the defendants' willful and wanton conduct. In light of the hybrid nature of the concept of willful and wanton conduct, and the circumstance that such behavior may not amount to an intentional tort *per se*, we agree with the court in *Mendenhall* that "the fact finder's ability to prorate the damages between plaintiff and defendant best serves justice and is most consistent with the reasons for comparative negligence." (164 Ill. App. 3d at 61.) Although we agree with the court's observation in *Burke* that there is a distinction in the degrees of culpability associated with ordinary negligence and willful and wanton conduct, we are unable to conclude that this distinction should preclude an equitable apportionment of compensatory damages between the plaintiff and defendants in the case at bar. In addition, as the court noted in *Mendenhall*, we find that the reasons for limiting application of comparative fault principles in Structural Work Act and strict product liability cases are not present in the instant cause, which involves premises liability. (See *Mendenhall*, 164 Ill. App. 3d at 59-61, discussing *Hollis v. R. Latoria Construction, Inc.* (1985), 108 Ill. 2d 401, 485 N.E.2d 4 (comparative fault inapplicable to structural work case), and *Coney v. J.L.G. Industries, Inc.* (1983), 97 Ill. 2d 104, 454 N.E.2d 197 (misuse and assumption of risk considered damage-reducing factors in strict product liability case).) We cannot say that the reasons underlying the recognition of willful and wanton conduct as a basis for liability in tort are equivalent to the goals that justified the Illinois Supreme Court's decisions in *Hollis* and *Coney*.

We note that the jury in the instant cause awarded only compensatory damages, and we express no opinion with respect to whether comparative fault principles apply to a plaintiff's award for punitive damages. Also, since the case at bar does not involve a defendant found liable for an intentional tort, we do not address the applicability of comparative fault as an offset to the damages assessed against an intentional tortfeasor. In addition, we express no view with regard to whether willful and wanton conduct is governed by the modified comparative fault statute (Ill. Rev. Stat. 1987, ch. 110, par. 2—1116 (effective November 26, 1986)) enacted following the Illinois Supreme

Court's decisions in *Alvis, Hollis* and *Coney,* since the parties did not present the question to the trial court in this 1988 jury trial, nor do the parties raise the issue in this appeal. We would also note that the applicability of the modified comparative fault statute was not considered by the courts in *Mendenhall, Yates,* or *Burke.*

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

JIGANTI, P.J., and LINN, J., concur.